IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DOUGLAS W. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV-07-427 EJL |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| MARIO A. NEVAREZ and SWIFT | ) | |
| TRANSPORTATION COMPANY, INC., | ) | **Plaintiff's Motion to Compel** |
| | ) | (Docket No. 16) |
| Defendants. | ) | |
| ‎_____ | ) | |

Currently pending before the Court is Plaintiff's Motion to Compel Answers to

Interrogatories and Responses to Requests for Production of Documents to Mario A. Nevarez

and Swift Transportation Co., Inc. and for Award of Attorneys Fees (the "Motion to Compel")

(Docket No. 16).  Having carefully reviewed the record, considered oral arguments, and

otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ANALYSIS

Plaintiff Douglas Davis, a passenger in one truck, and Defendant Mario Nevarez, the

driver of another truck, were involved in a June 28, 2006 motor vehicle accident.  The exact

circumstances contributing to the accident, while disputed, are not integral toward resolving the

instant discovery dispute.  Needless to say, liability is disputed.

### A.    Motion to Compel: The Standard

It is in the discretion of the trial court to order a party to produce documents or answer

interrogatories.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 1**

1992); *Ah Moo v. A.G. Becker Paribus, Inc.*, 857 F.2d 615, 619 (9th Cir. 1988).  As a general

rule "parties may obtain discovery regarding any matter, not privileged, which is relevant to the

subject matter involved in the pending action . . . .  The information sought need not be

admissible at the trial if the information sought appears reasonably calculated to lead to the

discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

       The Supreme Court of the United States has indicated that the definition of relevancy, for

purposes of discovery, "has been construed broadly to encompass any matter that bears on, or

that reasonably could lead to other matters that could bear on, any issue that is or may be in the

case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978).  Consistent with the

liberal, notice pleading standards, "discovery is not limited to issues raised in the pleadings, for

discovery itself is designed to help define and clarify the issues."  *Id.*  At the same time, there are

limits to what a party may properly seek via discovery.  "District courts need not condone the

use of discovery to engage in 'fishing expedition[s].'"  *Rivera v. NIBCO*, 364 F.3d 1057, 1072

(9th Cir. 2004) (citing *Exxon Corp. v. Crosby-Mississippi Res., Ltd.*, 40 F.3d 1474, 1487 (5th

Cir. 1995)).  Thus, courts will not compel discovery that is wholly speculative.  *Id.*

       Here, the disputed discovery requests fall into two general categories: (1) all discovery

requests served upon Defendant Nevarez; and (2) specific discovery requests served upon

Defendant Swift Transportation Company, Inc. ("Swift") relating to particular issues.  In

addition, Plaintiff seeks an order compelling Defendants to incorporate all redacted information

and withheld documents on a privilege log.

       Each of the disputed discovery requests is addressed below.  Following the rule outlined

in *Oppenheimer*, the Court has resolved many of the issues by allowing Plaintiff's discovery on

**MEMORANDUM DECISION AND ORDER - 2**

any unprivileged matters that could bear on any issue that is or may be involved in this case - not just the specific allegations set forth in the underlying Complaint.

**B.     Discovery to Defendant Nevarez**

On November 20, 2006, Plaintiff served his First Requests for Production of Documents to Defendant Nevarez.  *See* Pl.'s First Requests for Prod. of Docs., attached as Ex. 5 to Chasan Aff. (Docket No. 18, Att. 6).  On February 7, 2006, Plaintiff served his First Set of Interrogatories and Second Set of Requests for Production of Documents to Defendant Nevarez. *See* Pl.'s First Interrog. and Second Requests for Prod. of Docs., attached as Ex. 6 to Chasan Aff. (Docket No. 18, Att. 7).  On December 21, 2007, Plaintiff served his Third Set of Requests for Production of Documents to Defendant Nevarez.  *See* Pl.'s Third Set of Requests for Prod. of Docs., attached as Ex. 7 to Chasan Aff. (Docket No. 18, Att. 8).  According to Plaintiff, Defendant Nevarez has neither responded nor objected to these discovery requests.  *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 6 (Docket No. 17).

In response, Defendants do not dispute that Defendant Nevarez has not responded to Plaintiff's discovery.  Instead, Defendants claim that Defendant Nevarez no longer works for Defendant Swift such that his cooperation cannot be guaranteed.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, pp. 5-7 (Docket No. 20).  The Court does not question either the difficulty in coordinating a defense strategy with an out-of-state defendant who is no longer employed by another defending party or Defendants' counsel's extensive efforts to accomplish as much.

However, Defendant Nevarez is not completely *incommunicado*.  On at least two separate occasions, Defendant Nevarez has submitted declarations on Defendants' counsel's behalf.  *See* Dec. of Mario A. Nevarez in Supp. of Defs.' Not. of Removal; *see also* Dec. of

**MEMORANDUM DECISION AND ORDER - 3**

Mario A. Nevarez, attached as Ex. 18 to Chasan Aff. (Docket No. 18, Att. 23).[1]  This is not to suggest that Defendants's counsel has unfettered access to Defendant Nevarez; to be sure, they do not.  Yet, as history indicates, Defendants' counsel has previously secured Defendant Nevarez's participation in relation to efforts that serve Defendants' interests - removing the action to federal court and avoiding a deposition in Idaho.

Moreover, it seems unfair for Plaintiff to bear the consequence of an uncooperative Defendant by either disregarding already served discovery requests or forbidding Plaintiff's counsel from issuing any further discovery.[2]  These are problematic circumstances, however unless Defendant's counsel is permitted to withdraw from the action or alternate arrangements are made with Plaintiff to account for the apparent need for Defendant Nevarez's information, there is no compelling justification to allow Defendant Nevarez's delinquency to continue.

Based on the foregoing, therefore, Plaintiff's Motion to Compel (Docket No. 16) with respect to Defendant Nevarez is granted.

---

[1]  While not pointed out by Plaintiff's counsel, Defendant Nevarez also submitted a March 30, 2007 declaration in support of his efforts to remove the companion case - *Buckmeier v. Nevarez, et. al*, 07-CV-00154-BLW - from state court to federal court.  *See* Dec. of Mario A. Nevarez in Supp. of Defs.' Not. of Removal (Docket No. 5 in related case).  It is important to mention that Defendant Nevarez shares/shared the same counsel in both actions.

[2]  In state court, before removal, Defendants filed a Motion for Protective Order (Docket No. 1, Att. 12) to prevent discovery to Defendant Nevarez given his unavailability.  *See* Mem. in Supp. of Def. Nevarez's Mot. for Prot. Order, pp. 1-4 (Docket No. 1, Att. 13).  This Motion was neither ruled upon by the state court judge nor fully briefed once this action was removed to this Court.  Still, Defendants seem to offer the Motion for Protective Order as justification for Defendant Nevarez to avoid Plaintiff's discovery.  Defendants are incorrect.  Pursuant to FRCP 26(c)(1), protective orders are appropriate "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  *See* Fed. R. Civ. P. 26(c)(1).  These general categories and the more specific circumstances found in corresponding case law do not operate to allow Defendant Nevarez the luxury of simply not responding to discovery because of client-control issues.

**MEMORANDUM DECISION AND ORDER - 4**

**C.     Discovery to Defendant Swift**

Preliminarily, many of the contested requests for production of documents potentially speak to Defendant Nevarez's medical condition.  Plaintiff argues that Defendant Nevarez's medical condition is relevant to the extent it possibly contributed to the accident giving rise to the instant action.  Defendants respond by arguing that Defendant Nevarez's medical history is a non-issue because there is no evidence that he was impaired in any manner at the time of the accident.

The Federal Motor Carrier Safety Regulations ("FMCSR") establish both the minimum qualifications for persons who drive commercial motor vehicles and the minimum duties of motor carriers with respect to the qualifications of their drivers.  *See* 49 C.F.R. § 391.1(a).[3] According to the FMCSRs, "[a] person shall not drive a commercial motor vehicle unless he is physically qualified to do so."  *See* 49 C.F.R. § 391.41(a).  A person is physically qualified to drive a commercial motor vehicle when, *inter alia*, he "[h]as no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his ability to drive a commercial motor vehicle safely."  *See* 49 C.F.R. § 391.41(b)(9).

Through the course of this litigation, it became apparent that, at or around the time of the June 28, 2006 accident, Defendant Nevarez was taking Zyprexa (generic name: Olanzapine), a medication sometimes prescribed for treating schizophrenia and acute, mixed, or manic episodes associated with bipolar disorder.  *See* Pl.'s Expedited Mot. to Submit Third Aff. in Supp. of Pl.'s Mot. to Compel, p. 2 (Docket No. 25).  Zyprexa's side effects may include agitation, change in

---

[3]  Defendants do not address the FMCSRs in their response to Plaintiff's Motion to Compel, let alone argue that the FMCSRs are inapplicable in this instance.  Indeed, during oral argument, Defendants' counsel acknowledged these regulations' applicability here.

personality, dizziness, sleepiness, tremors, and/or weakness.  *See* Thompson, *Physicians Desk Reference* (Kathleen Engel ed., 62nd ed. 2008).

The fact that Defendant Nevarez was taking Zyprexa or, alternatively, not taking Zyprexa when he should have, is not dispositive on the issue of liability.  Still, it is a stretch to argue that medication that may contribute to erratic behavior if taken or, likewise, may explain such behavior if not taken, is not relevant to the action.  Indeed, the FMCSRs have placed this type of information at issue.  *See* 49 C.F.R. § 392.3 ("No driver shall operate a commercial motor vehicle . . . while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle.").  Even if inadmissible, such information may be relevant if it leads to the discovery of admissible evidence.  *See* Fed. R. Civ. P. 26(b)(1).

So long as liability is contested,[4] the reasons for the accident that is ultimately the genesis of this action are relevant and, therefore, discoverable.[5]  With this backdrop, the Court considers the following discovery requests:

---

[4]  Although the full Complaint is not on file (*see* State Court Complaint (Docket No. 1, Att. 3), it is clear that Defendant Nevarez denies liability.  *See* Nevarez Answer, p. 2 (Docket No. 1, Att. 10) ("This answering defendant denies that Defendant Mario A. Nevarez negligently operated the semi-truck by driving into the oncoming lane . . . .")

[5]  Defendants' argument that Defendant Nevarez's medical condition and treatment has not been placed at issue is unpersuasive.  The Motion to Compel itself is evidence that, in fact, Defendant Nevarez's medical condition is at issue in much the same way as the medical condition of the driver of Plaintiff's vehicle would no doubt be at issue.  Moreover, Defendants' reliance on *Murphy v. Board of Educ. of Rochester City School Dist.*, 196 F.R.D. 220 (W.D.N.Y. 2000) is misplaced.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 12 (Docket No. 27).  There, the court did not consider the relevance of a party's medical condition within the context of a motor vehicle accident.  Here, because liability is disputed, whether the drivers of the two trucks (party and non-party) were impaired at the time of the accident relates squarely to the issues raised in the Complaint in a way that distinguishes this action from *Murphy*.

**MEMORANDUM DECISION AND ORDER - 6**

1.    Request for Production No. 86

On November 16, 2007, Plaintiff served his Fourth Set of Requests for Production of Documents on Defendant Swift.  *See* Pl.'s Fourth Set of Requests for Prod. of Docs., attached as Ex. 4 to Chasan Aff. (Docket No. 18, Att. 5).  Originally, Plaintiff argued that "no responses have been received, nor have any objections been filed" to these requests.  *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 7 (Docket No. 17).  Since then, Defendants responded, believing, in turn, that this portion of Plaintiff's Motion to Compel now moot.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 7 (Docket No. 20).  While Plaintiff now concedes that Requests for Production Nos. 83-85 are no longer in contention, there apparently remains an issue with Request for Production No. 86.  *See* Reply Brief by Pl. in Supp. of Mot. to Compel, pp. 1-4 (Docket No. 23).

Request for Production No. 86 seeks information regarding Defendant Nevarez's statements on his 2006 Swift application that he had a speeding violation and an overturn accident on January 5, 2004.  *See* Pl.'s Fourth Set of Requests for Prod. of Docs., attached as Ex. 4 to Chasan Aff. (Docket No. 18, Att. 5).  Defendants apparently believe that such information is irrelevant.  *See* Reply Brief by Pl. in Supp. of Mot. to Compel, p. 3 (Docket No. 23).  Through his reply brief, Plaintiff discusses why such information is relevant; however, these reasons are independent of Plaintiff's original impetus for moving to compel Defendant Swift's responses (failure to respond altogether).  In other words, by virtue of the briefing schedule, Defendant Swift has not been able to respond to Plaintiff's recent retort.

Because the reason for moving to compel a response to Request for Production No. 86 specifically has now changed such that Defendant Swift's response is no longer applicable, the Court must deny Plaintiff's Motion to Compel (Docket No. 16) in this limited respect at this

**MEMORANDUM DECISION AND ORDER - 7**

time.  Having said this, based upon the record before the Court, it appears the requested information could lead to the discovery of admissible evidence relating to Defendant Swift's notice of Defendant Nevarez's driving propensities prior to his hiring.  *See infra* at pp. 8-11. Nonetheless, if the parties continue to be incapable of resolving their discovery disputes without this Court's involvement, Plaintiff may certainly renew his Motion as to information sought within Request for Production No. 86 at a later time.

        2.   <u>Requests for Production Nos. 70 and 81</u>

        Two days after the accident, Defendant Swift prepared a "Safety Department Driver Review" (the "Review")  *See* Safety Department Driver Review, attached as Ex. 11 to Chasan Aff. (Docket No. 18, Att. 12).  The Review speaks to (1) Defendant Nevarez's "Accident History," identifying not only the accident giving rise to this action, but also a March 25, 2002 accident in El Paso, Texas; (2) "[two] preventable accidents within [four years and three months];" (3) "[twenty-four] log violations within [six] months;" (4) "[thirteen] overspeeds;" and (5) "a negative road report" relating to "passing vehicles on do[u]ble yellow line [and] forcing other truck off the road."  *See id.*  Through Request for Production No. 70, Plaintiff seeks all documents related to or supporting the above-mentioned references within the Review.  Further, through Request for Production No. 81, Plaintiff seeks the documents speaking to the protocol for completing the Review.

        a.   <u>The March 25, 2002 Accident and the Two "Preventable"Accidents</u>

        Defendant Swift believes that Defendant Nevarez's March 25, 2002 accident and the two "preventable" accidents are irrelevant to this action.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 9 (Docket No. 20).  The information sought is relevant and should be produced.

**MEMORANDUM DECISION AND ORDER - 8**

First, assuming the accidents are similar to the circumstances present in the June 28, 2006 accident (for example, an accident involving speed and/or loss of control vs. an accident resulting from a flat tire), the information addresses Defendant Swift's knowledge of Defendant Nevarez's driving propensities.[6]  Without addressing at this time the actual admissibility of such information (and/or for what particular purposes), it is apparent that its production is reasonably calculated to lead to the discovery of admissible evidence.  *See Walker v. Wal-Mart Stores, Inc.*, 2007 WL 1031576, *4 (D. Mont. 2007) (information relating to prior accidents "is probative of whether [defendant] had knowledge of or intentionally disregarded facts that created a high probability of injury to [plaintiff] and deliberately proceeded to act in conscious or intentional disregard or with indifference to the high probability of injury to [plaintiff]").

Second, as a practical matter, to argue on the one hand that the requested information is not relevant, yet, on the other hand, include the same information on a "Safety Department Driver Review" two days after the accident in question strikes the Court as inconsistent. Because such information was important to Defendant Swift at the time it completed the Review, it cannot be said that it loses its importance and/or relevance once a third-party seeks information relating to that same, potentially salient point.  For these reasons, information relating to these accidents is relevant and subject to disclosure.[7]

---

[6]  Presumably, if they were not sufficiently similar, Defendant Swift would have (1) not included it on the Review, (2) incorporated the same into its response to Request for Production No. 70, and/or (3) made the argument in its response to Plaintiff's Motion to Compel (Docket No. 16).  Defendant Swift did not do any one of these.

[7]  There does not appear to be a dispute that the reference to the June 28, 2006 accident at Powell Junction, Idaho relates to this action - the current subject of scores of discovery requests.

**MEMORANDUM DECISION AND ORDER - 9**

  b. <u>The Twenty-Four Log Violations</u>

  Defendant Swift claims that "the log book violation information is not retained after six months in accordance with FMCSR 395.8(k)."  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 9 (Docket No. 20).[8]  However, on September 21, 2006, Plaintiff's counsel sent a letter to Defendant Swift demanding the preservation of, among other things, the driver logs for the six-month period leading up to the June 28, 2006 accident.  *See* 9/21/06 Ltr., attached as Ex. 15 to Chasan Aff. (Docket No. 18, Att., 16).

  Given the timing of this preservation demand, in conjunction with FMCSR 395.8(k), Defendant Swift would not necessarily have the driver logs for the entire six months preceding the June 28, 2006 accident.  Instead, pursuant to FMCSR 395.8(k), at the time of the preservation demand, Defendant Swift may have retained only the driver logs for the six months leading up to September 21, 2006.  However, without addressing the preservation demand itself, Defendant Swift suggests matter-of-factly that the requested information need not be retained, thus implying that it did not retain such information for production.  This response misses the point.

---

  [8] In its Response to Plaintiff's Motion to Compel (Docket No. 16), Defendant Swift also argues that such information is not relevant because logbook violations "are not necessarily related to driving and are not relevant to the accident which forms the basis of this litigation." *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 9 (Docket No. 20).  This objection, however, was not raised when Defendant Swift responded to Request for Production No. 70.  Regardless, the Court is persuaded by Plaintiff's response that logbook violations as to hours of service may speak to the FMCSRs prohibition of driving while impaired, "through fatigue, illness, or any other cause . . . ."  *See* Reply in Supp. of Mot. to Compel, p. 4 (Docket No. 23) (citing 49 C.F.R. § 392.3).  Finally, as with the reference to the two preventable accidents on the Review, the same reference to the twenty-four log violations on that same Review cuts against the argument that such information is not relevant.

**MEMORANDUM DECISION AND ORDER - 10**

As of the date of the preservation demand, Defendant Swift should have had in its possession the driver logs for at least the six months leading up to September 21, 2006, including the driver logs for the June 28, 2006 accident date.  Once Defendant Swift received the preservation demand, an argument exists that those driver logs should have been retained for the purpose of this litigation.[9]  Therefore, to the extent they exist, Defendant Swift is ordered to produce the driver logs for the period six months preceding September 21, 2006 through June 28, 2006 - a period of roughly three months.

> c.   Thirteen "Overspeeds" and "Negative Road Report"

In response to Plaintiff's request for the production of documents related to the referenced thirteen "overspeeds" and "negative road report," Defendant Swift states: "[T]he relevant documents would be located in the driver qualification file already provided; if not Defendant[] [Swift] [is] not in possession of documents responsive to that part of the request." *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 9 (Docket No. 20).[10]  Plaintiff believes that

---

[9]  Litigation was clearly contemplated as of September 21, 2006.  In the preservation demand, Plaintiff's counsel stated in no uncertain terms:

> I am writing to inform you that a claim is being made to recover damages for the injuries of Douglas W. Davis and to demand that the documents described below that now exist, whether or not in the immediate possession of driver Mario A. Nevarez or Swift Transportation Co., Inc., not be destroyed regardless of company policy or legal requirements.

*See* 9/21/06 Ltr., attached as Ex. 15 to Chasan Aff. (Docket No. 18, Att., 16).

[10]  Even though Defendant Swift appears to acknowledge the existence of "relevant documents" in its response to Request for Production No. 70, it later states that such information is not relevant in its Response to Plaintiff's Motion to Compel.  *See* Defs.' Resp. To Pl.'s Mot. To Compel, p. 10 (Docket No. 20).  This objection, though not originally raised, is not persuasive for the same reasons offered as to the production of documents relating to the March 25, 2002 El Paso, Texas accident and twenty-four alleged log violations.  *See supra* at pp. 8-11.

**MEMORANDUM DECISION AND ORDER - 11**

Defendant Swift's position is "simply and absolutely not true; Plaintiff has searched and cannot find any such documents." *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 8 (Docket No. 17). Plaintiff seems to misunderstand Defendant Swift's response.

Through its response, Defendant Swift appears to be stating that, if any such documents exist, they are within the already-produced driver qualification file; if they are not within the driver qualification file, Defendant Swift does not have responsive documents.  In other words, because the requested documents are not within the driver qualification file, there are no additional documents capable of being produced.  Defendant Swift cannot produce what it does not have.  Assuming this, in fact, is the case, Plaintiff's Motion to Compel (Docket No. 16) in this respect is denied.[11]

> d.   Safety Department Driver Review Protocol

Request for Production No. 81 seeks the production of "[a]ll written policies, procedures, instructions . . . related to when, how, or why, and by whom a Safety Department Driver Review will be performed by [Defendant] Swift." *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 8 (Docket No. 17).  Defendant Swift responded that "such a safety review is completed when termination of a driver is contemplated." *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 10 (Docket No. 20).  Consistent with Request for Production No. 81, Plaintiff now seeks the production of *documents* relating to the protocol for filling out the Review - not just an explanation of the circumstances for filling out the Review. *See* Brief in Supp. of Pl.'s Mot. to Compel, pp. 8-9 (Docket No. 17).

---

[11]   Alternatively, if Defendant Swift *does* maintain responsive documents (which is unclear in light of Defendant Swift's Response to Plaintiff's Motion to Compel (Docket No. 16)), Plaintiff's Motion to Compel (Docket No. 16) is granted and such documents are to be produced.

**MEMORANDUM DECISION AND ORDER - 12**

Defendant Swift states that it does not have a written policy or procedure regarding when a Review will be conducted such that there are no responsive documents to produce.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 10 (Docket No. 20).  Plaintiff does not believe Defendant Swift.  *See* Reply in Supp. of Mot. to Compel, p. 6 (Docket No. 23) ("If no written policies or procedures existed, why wouldn't Defendant state that originally.  Why did Defendant instead play games and provide such an evasive and incomplete answer.  How can anyone possibly believe the Defendant at this point?").

The Court is in no position to question Defendant Swift's counsel's veracity when responding either to discovery or to Plaintiff's Motion to Compel.  Under FRCP 11, an attorney's signature certifies to all, including the Court, that the information contained therein is true.  *See* Fed. R. Civ. P. 11(b)(1-4).  Armed with this representation, the Court must accept Defendant Swift's position and deny Plaintiff's Motion to Compel (Docket No. 16) in this respect.[12]

3.   Request for Production Nos. 11 and 14[13]

Within Request for Production No. 11, Plaintiff requested the complete "driver's qualification file," including Defendant Nevarez's medical examinations.  *See* Resp. to Pl.'s First Request for Prod. of Docs., attached as Ex. 1 to Chasan Aff. (Docket No. 18, Att. 2).  Defendant

---

[12]  Again, if Defendant Swift *does* maintain responsive documents, Plaintiff's Motion to Compel (Docket No. 16) is granted and such documents are to be produced.

[13]  Plaintiff's paperwork does not incorporate argument as to Request for Production No. 14.  Also, Defendant Swift represents that it provided Defendant Nevarez's pre-employment drug screen to Plaintiff on July 20, 2007.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 12 (Docket No. 20).  Therefore, Request for Production No. 14 no longer appears to be in contention.

**MEMORANDUM DECISION AND ORDER - 13**

Swift provided a redacted medical examination report, claiming that the redaction was done "in accordance with HIPPA." *See id.*; *see also* Medical Examination Report, attached as Ex. 20 to Chasan Aff. (Docket No. 18, Att. 25). Plaintiff now seeks to compel the full content of Defendant Nevarez's medical examination report. *See* Brief in Supp. of Pl.'s Mot. to Compel, pp. 9-10 (Docket No. 17).

Without reiterating or even explaining its HIPPA-related argument supporting its initial redaction efforts, Defendant argues that, so long as Plaintiff has information showing that Defendant Nevarez was *qualified* to drive, the redacted medical information is irrelevant. *See* Defs.' Resp. To Pl.'s Mot. to Compel, p. 11 (Docket No. 20). For the reasons explained earlier (*see supra* at pp. 5-6), Defendant Nevarez's medical condition, and not just a medical examiner's certificate (*see* Ex. C to Verschoor Dec. (Docket No. 21)), is reasonably calculated to lead to the discovery of admissible evidence and, therefore, is relevant and should be produced.[14]

4.   Request for Production Nos. 71-74

Plaintiff's Request for Production Nos. 71 and 72 request information relating to motor vehicle accidents involving Defendant Swift that occurred on Idaho State Highway 12 since 1998. *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 11 (Docket No. 17). However, it is

---

[14] Further, it is not clear that HIPPA applies within the context of requesting medical information from an individual's employer instead of the more typical covered entity, such as a treating physician or medical provider. Regardless, protected medical information may be disclosed in the course of any judicial proceeding pursuant to a court order, subpoena, or discovery request upon receiving satisfactory assurances, as evidenced by, for example, a qualified protective order. FRCP 26(c) affords the Court discretion to enter a protective order "for good cause shown." *See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 156 (E.D.N.Y. 2005) (refusing production of documents on HIPPA grounds held unpersuasive where "parties are free to enter into confidentiality agreements preventing disclosure outside the litigation context").

**MEMORANDUM DECISION AND ORDER - 14**

important to mention that, through a Freedom of Information Act request, Plaintiff has already

secured copies of thirty-three Idaho Vehicle Collision Reports from the Idaho Department of

Transportation involving Defendant Swift vehicles on Idaho State Highway 12. *See id.*; *see also*

Idaho Vehicle Collision Reports, attached as Ex. 17 to Chasan Aff. (Docket No. 18, Atts. 18-22).

Plaintiff argues that the additional information requested "go[es] directly to prior knowledge by

[Defendant] Swift of the dangerous nature of Highway 12 and whether Swift was negligent in

continuing to allow the use of Highway 12 by its drivers prior to this accident." *See* Brief in

Supp. of Pl.'s Mot. to Compel, p. 12 (Docket No. 17).

        It is unclear the extent to which the requested information will reveal Defendant Swift's

prior knowledge beyond what is already contained in the thirty-three Idaho Vehicle Collision

Reports. In other words, there does not appear to be a question that Defendant Swift necessarily

maintained some prior knowledge of the potential for danger with respect to Highway 12 when

considering the thirty-three Idaho Vehicle Collision Reports. Moreover, the very real possibility

that such accidents involve different drivers, different trucking rigs, different driving conditions,

different locations on Idaho State Highway 12, etc. cut against Plaintiff's above-referenced

justification for the information.

        These factors, coupled with the burden of culling through eight years worth of

documentation and reports weigh against the production of such requested information at this

time.[15] Certainly, if Plaintiff is capable of offering compelling reasons for the information

_____

        [15] The Court's reluctance to compel the production of information relating to Defendant
Swift's prior accidents on Idaho State Highway 12, applies equally to the sub-set of information
requested through Plaintiff's Request for Production No. 74. There, Plaintiff requested "[a]ll
records related to any accident or incident involving a Swift Commercial Motor Carrier Vehicle
that occurred on Idaho State Highway 12 which was attended by Mark Morris." *See* Ex. 3 to
Chasan Aff. (Docket No. 18, Att. 4). Mr. Morris appeared to hold a supervisory position for

**MEMORANDUM DECISION AND ORDER - 15**

sought independent of the Idaho Vehicle Collision Reports, he may renew his Motion as to these Requests for Production at a later time.

Plaintiff's related Request for Production No. 73 requests information regarding an internal corporate policy (adopted after the June 28, 2006 accident) that closed Highway 12 to Defendant Swift drivers.  *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 12 (Docket No. 17). This post-accident policy, and any documentation relating thereto, not only seems irrelevant to the underlying issue of liability, but also, when considering Plaintiff's justification for the production of such information (prior knowledge), superfluous when, again, armed with both the thirty-three Idaho Vehicle Collision Reports and the deposition testimony of Mr. Morris, who apparently discussed the at-issue policy during his deposition.  *See id.* at pp. 11-12 ("[P]laintiff took the deposition of Mark Morris on November 8, 2007. . . .  Mr. Morris confirmed that following plaintiff's accident there was a policy adopted by [Defendant] Swift that prevented the use of Highway 12 by [Defendant] Swift drivers unless they were on a dedicated route.").

However, superfluity alone should not operate to deny the production of otherwise relevant information on the issue of notice.  Unlike the voluminous information requested within Requests for Production 71, 72, and 74, Request for Production No. 73 seeks the production of a discrete policy.  That is, the burden, time, and expense associated with producing the former documentation is likely not present with respect to the latter.  Moreover, the Court finds Defendant Swift's objection to the policy's production in light of FRE 407 to be unpersuasive.

_____

Defendant Swift and was present at the scene of the June 28, 2006 accident.  Plaintiff offers no reason why the information related to Mr. Morris, like the request for information related to accidents dating back to 1998, present relevant information in ways not available through the Idaho Vehicle Collision Reports.

**MEMORANDUM DECISION AND ORDER - 16**

As previously discussed, the Court is obviously not ruling on the issue of evidence admissibility;

FRE 407 speaks to admissibility.  Even so, FRE 407 explicitly allows for the introduction of

subsequent remedial measures (if the policy can even be characterized as such) for reasons

independent of liability.  *See* Fed. R. Evid. 407 ("This rule does not require the exclusion of

evidence of subsequent measures when offered for another purpose, such as proving ownership,

control, or feasibility of precautionary measures, if controverted, or impeachment.") . Therefore,

the policy referenced within Mr. Morris's deposition and requested through Request for

Production No. 73 should be produced.[16]

    5.    Request for Production No. 75

Plaintiff seeks copies of job descriptions for various positions at Defendant Swift,

including: dispatcher, driver planner, driver manager, fleet manager, safety auditor, terminal

safety coordinator, regional safety manager, and terminal manager.  *See* Brief in Supp. of Pl.'s

Mot. to Compel, p. 13 (Docket No. 17).  Defendant Swift objects, arguing that the request is

overbroad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery

of admissible evidence.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 15 (Docket No. 20).

Further,  Defendant Swift reasons that "it is unclear why persons other than those involved in the

accident should be deposed."  *Id.*

---

[16]  The Court is troubled by Defendant Swift's counsel's representation at oral argument
that there is no written policy.  Not only did Mr. Morris clearly acknowledge during his
deposition that a written policy existed with respect to Defendant Swift's transport directives and
Highway 12 (*see* Morris Depo at 31:24-32:15, attached as Ex. 23 to Chasan Aff. (Docket No. 18,
Att. 28)), neither Defendant Swift's original response to Request for Production No. 73 nor its
response to Plaintiff's Motion to Compel (Docket No. 16) suggests the absence of a written
policy.  Perhaps Defendant Swift's counsel should confer with Mr. Morris and/or the referenced
Mr. Otto Welch, the terminal manager who "had the policy" (*see* Morris Depo. at 32:10, attached
as Ex. 23 to Chasan Aff. (Docket No. 18, Att. 28)), to confirm once-and-for-all the existence and
whereabouts of the requested policy.

**MEMORANDUM DECISION AND ORDER - 17**

Because Defendant Nevarez is not the only defendant in this action, it is not a unique situation to depose Defendant Swift's personnel when, in fact, Swift is a defendant itself. Moreover, the information sought - job descriptions - will not only dictate who is to be deposed, but also who is *not* to be deposed.  In this respect, it is in no party's interest to blindly depose Defendant Swift employees without knowing what their responsibilities on the job are.  If depositions are taken of certain employees whose job descriptions relate to the circumstances surrounding the accident, it must follow that the job descriptions themselves are capable of leading to the discovery of admissible evidence.  Therefore, the information sought is relevant and should be produced.  Plaintiff's Motion to Compel (Docket No. 16) in this respect is granted.

      6.    <u>Request for Production No. 78</u>

Defendant Nevarez's 2002 D.A.C. Record identifies a "Non DOT Recordable Accident/Incident less than 7 years old."  *See* D.A.C. Record, attached as Ex. 24 to Chasan Aff. (Docket No. 18, Att. 29).  Through Request for Production No. 78, Plaintiff seeks information, documents, and records related to that referenced accident.  *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 14 (Docket No. 17).

Defendant Swift objects, claiming that Plaintiff "has not explained why he thinks this information is relevant."  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 16 (Docket No. 20).  In doing so, Defendant Swift contradicts itself by ignoring that it previously acknowledged that "Plaintiff . . . argues . . . that the information is relevant because the level of supervision of a driver during his first six weeks of employment may be affected based on the number of accidents, pursuant to the federal motor carrier regulations."  *Id.*  For the same reasons stated earlier, Defendant Nevarez's accident history is relevant in that it may lead to the discovery of admissible evidence relative to Plaintiff's negligence claim against Defendant Swift, not

**MEMORANDUM DECISION AND ORDER - 18**

necessarily Defendant Nevarez's liability as to the June 28, 2006 accident specifically.  *See supra* at pp. 8-9.[17]  Therefore, Plaintiff's Motion to Compel (Docket No. 16) in this respect is granted.

    7.   <u>Request for Production No. 79</u>

Apparently, Defendant Nevarez was employed by another trucking company - Celadon Trucking ("Celadon") - from May 2000 through September 2000.[18]  Through discovery, Defendant Swift produced a "Past Employment Verification" from Celadon.  *See* Past Employment Verification, attached as Ex. 25 to Chasan Aff. (Docket No. 18, Att. 30).  There, within a section devoted to an employee's accident history, is the following notation: "See Attached."  *Id.*  Through Request for Production No. 79, Plaintiff seeks the referenced attachment(s).  *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 19 (Docket No. 17).

 The potential relevance of Defendant Nevarez's accident history as to Defendant Swift has already been discussed and applied in favor of disclosure.  *See supra* at pp. 8-10 & 18-19.  The information sought via Request for Production No. 79 is no different.  Just as the Past Employment Verification form itself is relevant (and has been produced), the attachments to that same form operate as an extension of the form and should be produced as well.  Therefore, Plaintiff's Motion to Compel (Docket No. 16) in this respect is granted.

---

    [17]  Earlier, the Court considered the relevance of a March 25, 2002 accident and wonders rhetorically whether the accident referenced within the D.A.C. Record is one and the same.

    [18]  Defendant Swift claims that Defendant Nevarez was actually employed by Celadon from November 1998 to August 1999 - not May 2000 to September 2000.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 17 (Docket No. 20).  While Defendant Swift's position appears to conflict with the Past Employment Verification, the distinction, if any, is not material to the Court's resolution of this discrete issue.

**MEMORANDUM DECISION AND ORDER - 19**

8.    Request for Production No. 1

Operational and supporting documents are records used by a motor carrier to verify the information reported and the driver's record of duty status.  *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 16 (Docket No. 17).  Through Request for Production No. 1, Plaintiff seeks certain operational and supporting documents, including (1) the June 2006 Fuel Billing Report, (2) the QTRAC Information Reports, (3) the QUALCOM Vehicle Positioning History Reports, and (4) the Bills of Lading/Shipping Documents.

a.    June 2006 Fuel Billing Report

Defendant Swift claims that it already provided the June 2006 Fuel Billing Report.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 17 (Docket No. 20).  In response, Plaintiff claims that, while the produced Fuel Billing Report claims to cover the time period May 1, 2006 through June 31, 2006, only May 2006 fuel billings are incorporated therein; in other words, there are no June 2006 fuel billings.  *See* Reply in Supp. of Mot. to Compel, p. 8 (Docket No. 23); *see also* Fuel Billing Report, attached as Ex. 34 to Second Chasan Aff. (Docket No. 24, Att. 4).  The Court understands that, following oral argument, Defendant Swift's counsel is now in possession of the June 2006 fuel billing report and will, in turn, produce the report to Plaintiff.  *See* Joint Discovery Report, p. 2 (Docket No. 43).

b.    QTRAC Information Reports

QTRAC is a satellite text messaging system between a trucking company and its driver. *See* Brief in Supp. of Pl.'s Mot. to Compel, p. 17 (Docket No. 17).  Defendant Swift has already supplied QTRAC reports for the six days leading up to the June 28, 2006 accident and the

**MEMORANDUM DECISION AND ORDER - 20**

accident date itself.  *Id.*[19]  However, Plaintiff claims that these reports are incomplete in that

none of the messages sent to Defendant Nevarez show when he read them.  *Id.*  According to

Plaintiff, "[a] driver's reading of, and response to, his company's satellite communications is a

valid indication of on-duty activity for the purpose of analyzing hours of service violations and

resultant fatigue.  *Id.* (citing Arthur Atkinson Aff. in Supp. of Pl.'s Mot. to Compel, ¶¶ 5-7 & 10

(Docket No. 10)).

 Defendant Swift counters by saying that all available QTRACS message histories have

been produced.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 18 (Docket No. 20) (citing Dennis

Ritchie Dec. in Opp. to Pl.'s Mot. to Compel, ¶¶ 5-10 (Docket No. 22)).

 Now, Plaintiff offers the Vehicle Position History (VPH) for another Swift driver and

vehicle, using the same QTRAC system.  *See* Vehicle Position History, attached as Ex. 35 to

Second Chasan Aff. (Docket No. 24, Att. 5).  According to Plaintiff, this alternative VPH

represents the type of information regularly captured by Defendant Swift, but not produced in

response to discovery.  *See* Reply in Supp. of Pl.'s Mot. to Compel, p. 8 (Docket No. 23).

 The differences between the produced QTRAC reports (Exs. 29 & 30 to Chasan Aff.

(Docket No. 18, Atts. 34 & 35)) and the unrelated QTRAC reports (Ex. 35 to Second Chasan

Aff. (Docket No. 24, Att. 5)) are clear.  However, the Court is in no position to know what

should or should not be included on a particular QTRAC report at a given time, such that it

_____

 [19]  Originally, Plaintiff requested the QTRAC Information Reports for the period of May
16, 2006 through June 28, 2006.  Defendant Swift only produced the Reports surrounding the
trip that Defendant Nevarez was on when the accident occurred - June 22, 2006 through June 28,
2006.  There does not appear to be any showing of the relevance of any Reports preceding the
June 22, 2006 date.  Therefore, Plaintiff's Motion to Compel (Docket No. 16) will be interpreted
to focus only on the adequacy of the material actually produced.

**MEMORANDUM DECISION AND ORDER - 21**

cannot decipher whether the produced QTRAC reports are accurate in content.  Regardless, the Court finds the QTRAC reports from June 22, 2006 through June 28, 2006 to be relevant for discovery purposes and should be produced in their entirety, to the extent they have not been so produced previously.

> c.   QUALCOM Vehicle Positioning History

Like the QTRAC Information reports, Defendant Swift provided Plaintiff with the QUALCOM Vehicle Positioning History reports from June 22, 2006 through June 28, 2006.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 19 (Docket No. 20).  The relevance of the QUALCOM Vehicle Positioning History reports for trips unrelated to this accident is questionable.  Therefore, the Court agrees with Defendant Swift as to the period of reports produced.

However, the Court does not share Defendant Swift's rationale for the reasons justifying redactions within these Vehicle Positioning History reports.  Defendant Swift claims that only "system information" ("F4=Exit or F5=Print and those types of commands") was redacted from these reports.  *See* Id. at p. 8.  Absent the existence of privileged, confidential, proprietary, or trade secret information, it is difficult to see why Defendant Swift would go through the trouble of redacting such admittedly innocuous information.  With this in mind, as with the QTRAC reports, the Court finds the QUALCOM Vehicle Positioning reports from June 22, 2006 through June 28, 2006 to be relevant and should be produced in their entirety.

> d.   Bills of Lading/Shipping Documents

Plaintiff argues that bills of lading and shipping documents "allow[ ] the plaintiff to determine whether there were violations of the hours of service regulations which in turn may result in driver fatigue, impaired driving ability, loss of reaction time, and loss of judgment."

**MEMORANDUM DECISION AND ORDER - 22**

*See* Id. at p. 18.  Defendant Swift agreed to provide Plaintiff with the bill of lading for the cargo being transported on the day of the accident.  *See* Joint Discovery Report, p. 2 (Docket No. 43).

Because the offered reason for the bill of lading surrounds Defendant Nevarez's condition prior to the accident, there does not appear to be any justification for the production of bills of lading for trips unrelated to the accident, potentially separated in time by days, weeks, and/or months.[20]  Therefore, the issue as to the production of bills of lading appears resolved.

**D.      Privilege Log**

FRCP 26(b)(5) provides that the party claiming a privilege shall make the claim expressly and "shall describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the [applicability of the privilege or protection]." *See* Fed. R. Civ. P. 26(b)(5)(A).  To facilitate the determination of privilege, a court may require the parties to submit a detailed privilege log, providing a description of the content withheld and a specific explanation of the privilege consistent with FRCP 26(b)(5).[21]  Logically, this avoids confusion over the status of redacted information within responsive documents or entire documents altogether, while allowing a requesting party the opportunity to test the claim.

---

[20]  Separately, through Request for Production No. 44, Plaintiff specifically requested only the bill of lading and shipping documents for June 28, 2006.  *See* RFP No. 44, attached as Ex. 1 to Chasan Aff. (Docket No. 18, Att. 2).

[21]  It is not unusual for parties to agree on a production protocol prior to their respective discovery efforts to avoid similar discovery disputes.  *See* Fed. R. Civ. P. 26, Advisory Committee Notes, 2006 Amendment ("Rule 26(b)(5)(B) works in tandem with Rule 26(f), which is amended to direct the parties to discuss privilege issues in preparing their discovery plan, and which, with amended Rule 16(b), allows the parties to ask the court to include in an order any agreements the parties reach regarding issues of privilege or trial-preparation material protection.")

**MEMORANDUM DECISION AND ORDER - 23**

Here, the withheld information primarily relates to the Vehicle Position Histories and Movement Displays.  *See* Ex. 19, attached to Chasan Aff. (Docket No. 18, Att. 24).  While not necessarily privileged information, Defendant Swift claims that the withheld information is immaterial to the litigation and, therefore, irrelevant and need not be produced.[22]

Regardless, the Court determines the best practice is that all parties be required to provide both a privilege log and a redaction log (to the extent the redactions are unrelated to a claimed privilege) for all information withheld.  Each log shall describe the document, communication, information, or things not produced in a way sufficient to assess the appropriateness of the privilege/redaction claimed, while not revealing any of the allegedly protected information.  It is through this process that, hopefully, future discovery disputes can be avoided and the parties' resources can be put toward more productive pursuits in advancing this litigation.

## E.   Sanctions

On balance, it appears that Plaintiff has not received relevant information that he has requested through discovery.  Further, it appears from the record that Plaintiff has made a good faith effort to resolve these discovery issues short of bringing the instant Motion to Compel (Docket No. 16).  Because Plaintiff's ultimate efforts to compel the production of this discovery are largely successful, the Court finds it appropriate to reimburse Plaintiff for his related expenses in filing the Motion to Compel (Docket No. 16).  Therefore, the Court orders that, on or before July 16, 2008, Plaintiff's counsel supply the Court and opposing counsel with an

---

[22]  Defendant Swift further argues that, in any event, it adequately identified the information withheld in supplemental responses to discovery.  *See* Defs.' Resp. to Pl.'s Mot. to Compel, p. 7 (Docket No. 20) (citing Ex. 1, attached to Chasan Aff. (Docket No. 18, Att. 2)).

**MEMORANDUM DECISION AND ORDER - 24**

affidavit itemizing the time and expenses associated with bringing the instant Motion to Compel

for the Court's consideration.

## II.  ORDER

In accordance with the foregoing, and the Court being fully advised in the premises, IT

IS HEREBY ORDERED that Plaintiff's Motion to Compel (Docket No. 16) be GRANTED in

part and DENIED in part as follows:

1.    Plaintiff's Motion to Compel with respect to all outstanding discovery to Defendant

Nevarez is GRANTED.

2.    Plaintiff's Motion to Compel with respect to Request for Production No. 86 to

Defendant Swift is DENIED without prejudice.

3.    Plaintiff's Motion to Compel with respect to Request for Production Nos. 70 and 81

is GRANTED as follows:

a.    Information relating to Defendant Nevarez's March 25, 2002 accident and the

"preventable accidents" is relevant and should be produced.

b.    Information relating to the twenty-four log violations is relevant and,

therefore, the driver logs for the period six months preceding September 21, 2006 through June

28, 2006 should be produced.

c.    Information relating to the thirteen overspeeds and the negative road report is

relevant and should be produced.  To the extent such information has already been produced

such that no additional information is in Defendant Swift's possession, Defendant Swift, through

counsel, shall so indicate.

**MEMORANDUM DECISION AND ORDER - 25**

       d.    Information relating to the safety driver review protocol is relevant and should be produced. To the extent such information has already been produced such that no additional information is in Defendant Swift's possession, Defendant Swift, through counsel, shall so indicate.

       4.    Plaintiff's Motion to Compel with respect to Request for Production No. 11 is GRANTED.

       5.    Plaintiff's Motion to Compel with respect to Request for Production No. 14 is MOOT.

       6.    Plaintiff's Motion to Compel with respect to Request for Production No. 71 is DENIED without prejudice.

       7.    Plaintiff's Motion to Compel with respect to Request for Production No. 72 is DENIED without prejudice.

       8.    Plaintiff's Motion to Compel with respect to Request for Production No. 73 is GRANTED.

       9.    Plaintiff's Motion to Compel with respect to Request for Production No. 74 is DENIED without prejudice.

       10.    Plaintiff's Motion to Compel with respect to Request for Production No. 75 is GRANTED.

       11.    Plaintiff's Motion to Compel with respect to Request for Production No. 78 is GRANTED.

       12.    Plaintiff's Motion to Compel with respect to Request for Production No. 79 is GRANTED.

**MEMORANDUM DECISION AND ORDER - 26**

13.    Plaintiff's Motion to Compel with respect to Request for Production No. 1 is GRANTED as follows:

a.    Information relating to the June 2006 fuel billing report is MOOT.

b.    Information relating to the QTRAC information reports is relevant and should be produced from June 22, 2006 through June 28, 2006.  To the extent such information has already been produced such that no additional information is in Defendant Swift's possession, Defendant Swift, through counsel, shall so indicate.

c.    Information relating to the QUALCOM Vehicle Positioning History reports is relevant and should be produced from June 22, 2006 through June 28, 2006.  To the extent such information has already been produced such that no additional information is in Defendant Swift's possession, Defendant Swift, through counsel, shall so indicate.

d.    Information relating to the bills of lading/shipping documents is relevant as to the date of the accident.  To the extent such information has already been produced such that no additional information is in Defendant Swift's possession, Defendant Swift, through counsel, shall so indicate.

14.    All parties are to provide a privilege and/or redaction log for all currently redacted and withheld information and for all future redactions and withheld information.

15.    Sanctions will be awarded.  On or before July 16, 2008, Plaintiff's counsel shall supply the Court and opposing counsel with an affidavit itemizing the time and expenses associated with successfully bringing the instant Motion to Compel.

**MEMORANDUM DECISION AND ORDER - 27**

IT IS FURTHER ORDERED that, to the extent Defendant Swift had at one time but no longer has in its possession information responsive to Plaintiff's discovery efforts, Defendant Swift indicate to Plaintiff's counsel when such responsive information was destroyed and/or the reason why the requested information is no longer in Defendant Swift's possession.



DATED:  **July 3, 2008**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 28**