IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS W. DAVIS, ) | Case No. CV-07-427 EJL |
| ) | |
| Plaintiff, ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| MARIO A. NEVAREZ and SWIFT ) | **AND ORDER** |
| TRANSPORTATION COMPANY, INC., ) | |
| ) | **Defendants' Motion to Dismiss** |
| Defendants. ) | (Docket No. 26) |
| _____) | |

Currently pending before the Court is Defendants' Motion to Dismiss (Docket No. 26). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following (1) Report and Recommendation as to the dispositive matters and (2) Memorandum Decision and Order as to the remaining non-dispositive matters:

## I. INTRODUCTION

In connection with this personal injury action, Plaintiff sought the production of certain medical records relative to Defendant Mario Nevarez. In this respect, Plaintiff issued three subpoenas to three out-of-state medical providers. In doing so, Plaintiff's counsel did not serve Defendants' counsel with copies of the subpoenas, nor did he provide notice of the subpoenas until after their respective service. Moreover, the subpoena to the Missoula, Montana medical facility resulted in the production of Defendant Nevarez's allegedly confidential information which Plaintiff's counsel, in turn, filed publicly with the Court in relation to Plaintiff's pending

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 1**

Motion to Compel (Docket No. 16). Defendants' counsel argues that, because counsel violated the Federal Rules of Civil Procedure by not properly providing notice of the subpoenas in question, Plaintiff's Complaint should be dismissed. Alternatively, Defendants argue that (1) Plaintiff's counsel should be disqualified, (2) evidence of Defendant Nevarez's medical condition should be excluded, (3) Defendant Nevarez's medical records should be returned, and/or (4) the Court should award monetary sanctions.

## II.  BACKGROUND

On June 28, 2006, Plaintiff was a passenger in a car traveling westbound on Highway 12, west of the Idaho-Montana border. *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 1 (Docket No. 27). Defendant Nevarez, the driver of a tractor-trailer, was traveling in the opposite direction. *Id*. at p. 2. The exact circumstances leading up to the inevitable accident are not important to the instant Motion; suffice it to say, there was an accident, Plaintiff was allegedly injured, and Plaintiff now brings this personal injury action against Defendant Nevarez and the owner of the tractor-trailer, Defendant Swift Transportation, Company, Inc.

Through discovery, Plaintiff sought the production of Defendant Nevarez's medical information. *Id*. Following Defendants' consistent objections to such requests, Plaintiff, in addition to pursuing a motion to compel, also subpoenaed Defendant Nevarez's medical records. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, p. 4 (Docket No. 37).[1] In March 2008, Plaintiff issued

---

[1] According to Plaintiff's counsel, these efforts followed his understanding that Defendant Nevarez spent time in two mental institutions. *See* Aff. of Andrew Chasan in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss, ¶ 4 (Docket No. 38). Although the subject of a separate Motion to Compel (Docket No. 16), Mr. Chasan "wanted to discover whether [Defendant] Nevarez likely suffered from a condition or illness, or was taking medication for that condition or illness, that impaired his ability to drive during his employment by Swift prior to and at the time of the wreck at issue in this case." *Id*.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 2**

three subpoenas to Defendant Nevarez's health care providers. *Id*. at pp. 4-5. These subpoenas were only served upon the health care providers - they were not simultaneously served upon Defendants' counsel. *Id*. at p. 5.

Following Plaintiff's April 17, 2008 deposition, Defendants' counsel first[2] learned that Plaintiff issued the three subpoenas. *See* Mem. in Supp. of Defs.' Mot. to Dismiss, pp. 2-3 (Docket No. 27). While two of the health care providers apparently refused to provide the requested information, the Missoula County Hospital ultimately produced Defendant Nevarez's medical records. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, p. 6 (Docket No. 37). In an effort to buttress his Motion to Compel (Docket No. 16), Plaintiff included these medical records as exhibits within a supplemental affidavit (Docket No. 25, Att. Nos. 1-3), posted onto the Court's internet-based docketing system. *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 3 (Docket No. 27). Plaintiff did not seal the medical records attached to this supplemental affidavit. *See* Pl.'s Resp. To Defs.' Mot. to Dismiss, p. 6 (Docket No. 37).[3]

According to Defendants, Plaintiff's failure to (1) provide notice of the original subpoenas and (2) seal Defendant Nevarez's medical information combine to highlight

---

[2] The exact time Defendants' counsel became or should have become aware of the subpoenas is disputed. Plaintiff argues that Defendant was aware of the subpoenas by virtue of his April 2, 2008 Reply in Support of Motion to Compel (Docket No. 31) wherein Plaintiff first revealed his subpoena efforts. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, p. 5 (Docket No. 37). The difference between April 17, 2008 and April 2, 2008 is immaterial. Regardless of the date, the fact remains that Plaintiff's counsel did not provide notice to Defendants' counsel of the three subpoenas at the time those three subpoenas were issued.

[3] On April 22, 2008, one day after Plaintiff attached Defendant Nevarez's medical records to the supplemental affidavit, the Court preliminarily granted Defendants' Expedited Motion for Protective Order (Docket No. 29) and converted the supplemental affidavit and its attachments into a sealed filing, capable of being viewed only by the Court and counsel for the parties. *See* Docket Entry Order (Docket No. 30).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 3**

Plaintiff's counsel's "flagrant, willful and deliberate violation of the civil rules." *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 4 (Docket No. 27). Defendants therefore seek to dismiss this action in its entirety,[4] or, alternatively, disqualify Plaintiff's counsel, exclude evidence of Defendant Nevarez's medical condition, return all materials received in response to the at-issue subpoenas, and/or award monetary sanctions. *Id*. at pp. 6-17.

### III.  ANALYSIS

**A.    Standards of Law: Subpoenas and Involuntary Dismissals**

As Defendants correctly point out, FRCP 45 governs the procedure for issuing subpoenas in a civil case. *Id*. at p. 4. With respect to providing notice, FRCP 45(b)(1) reads in relevant part:

> If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party.

Fed. R. Civ. P. 45(b)(1).[5]

---

[4]  Although the alleged violations relate to Defendant Nevarez only, Defendants appear to request that the claims against Defendant Swift Transportation Company, Inc. also be dismissed. Defendants offer no explanation for extending the relief sought beyond Defendant Nevarez.

[5]  The Advisory Committee's comments on the relevant 2007 Amendment reads:

> Former Rule 45(b)(1) required "prior notice" to each party of any commanded production of documents and things or inspection of premises. Courts have agreed that notice must be given "prior" to the return date, and have tended to converge on an interpretation that requires notice to the parties before the subpoena is served on the person commanded to produce or permit inspection. That interpretation is adopted in amended Rule 45(b)(1) to give clear notice of general present practice.

Fed. R. Civ. P. 45, Advisory Committee Notes, 2007 Amendment.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 4**

The reason for such notice is logical - proper notice provides counsel with the opportunity to timely object to a request for irrelevant, sensitive, confidential, or proprietary information *before* production.  *See Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 380 (D. Md. 1999) ("When a party fails to receive prior notice of the information sought from a non-party, a party is deprived of its greatest safeguard under the Rule, that is, the ability to object to the release of the information prior to disclosure.")

In conjunction with the notice requirements of FRCP 45(b)(1), Defendants offer FRCP 41(b) as the legal authority for dismissing Plaintiff's claims.  Pursuant to FRCP 41(b), "[i]f the plaintiff fails . . . to comply with these rules . . . a defendant may move to dismiss the action or any claim against it."  Fed R. Civ. P. 41(b).  Therefore, Defendants seem to argue that, because Plaintiff violated FRCP 45(b)(1) by failing to provide the requisite notice, FRCP 41(b) compels the dismissal of Plaintiff's claims.

## IV.  REPORT AND RECOMMENDATION

**A.     Failing to Provide Notice Pursuant to FRCP 45(b)(1):  Dismissal Sanction**

Defendants believe the appropriate sanction for Plaintiff's failure to provide notice pursuant to FRCP 45(b)(1) is dismissal of the action.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 6 (Docket No. 27).  However, ordering dismissal under such circumstances is properly considered the exception, not the rule.  *See, e.g.*, *Dupuis v. City of Hamtramack*, 2007 WL 4201132, *2 (E.D. Mich. 2007) ("Ordering dismissal or default to sanction a party to the litigation is usually reserved for situations akin to contempt of court or other abusive practices.").

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 5**

In *Dupuis*, cited favorably by Defendants, the United States District Court for the Eastern District of Michigan considered whether dismissal was an appropriate sanction in the context of a party's failure to provide notice pursuant to FRCP 45(b)(1). There, the court outlined four factors for considering the ultimate sanction of dismissal: (1) whether the party's failure to provide notice was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the offending party's failure to provide notice; (3) whether the offending party was warned that the failure to provide notice could lead to dismissal; and (4) whether less drastic sanctions are available instead of dismissal. *Id.* (citing *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995)).[6] These factors do not apply to compel the dismissal of Plaintiff's claims here.

First, the record before this Court does not reflect contumacious conduct on Plaintiff's counsel's behalf. Without question, the requisite notice was not provided; Plaintiff's counsel admits as much when repeatedly commenting that such an omission was, in fact, a "mistake." *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, pp. 2, 3, 6, 7, 10, 13, 16-18 (Docket No. 37). At the same time, however, Plaintiff's counsel is not altogether new to the practice of law and either he or his equally experienced local counsel should have understood the mandates and requirements of FRCP 45. Still, the consequence of such an obvious mistake by counsel is not necessarily deserving of the ultimate judicial penalty resulting in dismissal of the client's action. Indeed, Defendants cite to no case law where, as a result of a party's failure to provide notice of an

---

[6] Plaintiff argues in favor of applying the two-part test provided in *Murphy v. Board of Educ. of the Rochester City School Dist.*, 196 F.R.D. 220, 222 (W.D.N.Y. 2000). *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, p. 8 (Docket No. 37). This basic two-part analysis asks: (1) if counsel had a colorable basis, factually or legally, to issue the subpoenas; and (2) if the action was undertaken in bad faith. *See Murphy*, 196 F.R.D. at 225. Both queries are subsumed within the four-part test outlined in *Dupuis* and will be considered within this more expansive analysis.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 6**

issued subpoena, that party's claims were dismissed.[7]  In contrast to the authority referenced within Defendants' briefing, there is no indication here that Plaintiff's counsel's neglect in providing notice to Defendants reflects a pattern of similar violations.  Plaintiff's counsel subjectively believed that his issuance of the three subpoenas was proper.  *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, p. 8 (Docket No. 37).  He first attempted to secure the requested information through a medical release; he was not duplicitous; he did not misrepresent anything to Defendants; he did not appear to conceal the fact that he sent the subpoenas to the medical providers or that he received information in response to certain subpoenas; he provided Defendants with the information received from the Missoula, Montana facility; and, finally, he apologized for not providing notice to opposing counsel.  *Id*. at pp. 4, 8-12.  Such conduct does not excuse Plaintiff's counsel's actions, but it cannot likewise operate to constitute the requisite level of willfulness, bad faith, or fault to merit dismissal here.[8]

---

[7]  *See Dupuis v. City of Hamtramack*, 2007 WL 4201132 (E.D. Mich 2007) (persistent violation of FRCP 45(b)(1)'s notice requirement warranted monetary sanctions); *Murphy v. Board of Educ. of the Rochester City School Dist.*, 196 F.R.D. 220 (W.D.N.Y. 2000) (monetary sanctions warranted against counsel who repeatedly issued third-party subpoenas without giving notice to opposing counsel); *Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372 (D. Md. 1999) (admonishment against issuing future third-party subpoenas without prior notice deemed sufficient sanction); *Spencer v. Steinman*, 179 F.R.D. 484, 488 (E.D. Pa. 1998) (admonishment against future violations and payment of legal fees constituted appropriate sanction for violating FRCP 45(b)(1)); *Allender v. Raytheon Aircraft Co.*, 220 F.R.D. 661 (D. Kan. 2004) ($152 sanction warranted for defendant's counsel's "egregious" and "calculated effort to hinder if not circumvent plaintiff's ability to oppose" production of medical records).

[8]  This is particularly the case when, in other, more egregious circumstances, courts have declined the invitation to dismiss an action in favor of less extreme sanctions.  *See, e.g.*, *Murphy v. Board of Educ. of the Rochester City School Dist.*, 196 F.R.D. 220 (W.D.N.Y. 2000) (despite lack of colorable basis to support continued violations of FRCP 45(b)(1) and "clear evidence" of disingenuous conduct amounting to bad faith, only compensatory sanctions issued).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 7**

Second, other than stating that "Defendants have been prejudiced in the instant case" (Mem. in Supp. of Defs.' Mot. to Dismiss, p. 5 (Docket No. 27)), Defendants point to no specific prejudice resulting from their lack of notice that either has not already been remedied or cannot be remedied through other protections. *See, e.g.*, *Dupuis*, 2007 WL 4201132 at *3. Certainly the ability to object to the release of confidential information before disclosure is a paramount safeguard under FRCP 45(b)(1), however that failed opportunity alone cannot rise to the level of suffered prejudice needed to warrant dismissal - otherwise, each case cited by Defendants would have resulted in a dismissal. This observation should not be misconstrued to downplay the importance of the notice requirements; it does not. However, because Defendant Nevarez's medical information is now under seal, the issue concerning the relevance of such information now resolved, and the availability of other, less extreme, sanctions addressing Plaintiff's conduct (both past and future), resorting to the most severe sanction strikes this Court as unnecessary and imprudent. While Defendants may have been prejudiced, a dismissal is not a parallel sanction under the circumstances presented here.

Third, there is no evidence in the record that, by issuing the three subpoenas without prior notice to Defendants' counsel, Plaintiff's counsel violated a court order previously addressing this same issue. Therefore, there is no indication that Plaintiff or his counsel was warned that such conduct could lead to a dismissal. *Id*. As a result, Plaintiff's counsel's behavior is neither a repetitive disregard for court orders or procedure, nor subject to dismissal.

Fourth, there are other sanctions/protections that relate to Plaintiff's counsel's conduct that do not approach the magnitude of a dismissal. Without now commenting on the merits of these alternatives, lesser sanctions, including disqualification, evidentiary exclusions, and

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 8**

monetary sanctions exist to address Plaintiff's failure to provide notice of his subpoenas and, hopefully, discourage such oversights in the future. *See* Mem. in Supp. of Defs.' Mot. to Dismiss, pp. 13-16 (Docket No. 27). These alternate forms of relief suggest that a dismissal is unnecessarily excessive and, consequently, will not be recommended here.

The above factors, together with the strong policy reasons favoring disposition of cases on their merits, combine to reveal that dismissal is not the favored response to Plaintiff's counsel's procedural errors. Plaintiff's counsel's thirty-year practice does not regularly involve subpoenaing either plaintiffs' or defendants' medical records. *See* Aff. of Andrew M. Chasan in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss, ¶ 13 (Docket No. 37). In Plaintiff's counsel's words: "[He] had no experience in these matters" and "such a failure of notice was due solely to counsel's unfamiliarity with FRCP 45." *Id.*; *see also* Pl.'s Resp. to Defs.' Mot. to Dismiss, p. 6 (Docket No. 37). Importantly, no disciplinary proceedings have ever been instituted and no sanctions have ever been issued against Plaintiff's counsel. *See* Aff. of Andrew M. Chasan in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss, ¶ 11 (Docket No. 37). Against this backdrop, Plaintiff's counsel's self-described "innocently ignorant" mistake is not enough to dispose the case outright. Instead, the parties' claims should be resolved on the merits. Accordingly, it is recommended that Defendant's Motion to Dismiss (Docket No. 26) be denied in this respect.

## V.  ORDER

**A.     Failing to Provide Notice Pursuant to FRCP 45(b)(1):  Disqualification Sanction**

In the alternative, Defendants argue that Plaintiff's counsel should be disqualified. *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 13 (Docket No. 27). This "blunt" remedy rests with the discretion of the court and may constitute a sanction for violations of the Federal Rules.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 9**

*Biocore Med. Tech., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998). "The essential issue is whether the alleged misconduct taints the lawsuit." *Id.* (citing *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530-31 (D. Kan. 1992)). Disqualification is discouraged unless "'the offending attorney's conduct threatens to 'taint the underlying trial' with a serious ethical violation.'" *Biocore Med. Tech.*, 181 F.R.D. at 664 (quoting *Field v. Freedman*, 527 F. Supp. 935, 940 (D. Kan. 1981)). Plaintiff's counsel's technical violations of FRCP 45(b)(b)(1)'s notice requirement are not sufficient grounds for disqualification.

Defendants reference *Dupuis* in support of Plaintiff's counsel's disqualification. *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 14 (Docket No. 27). In *Dupuis*, the court similarly entertained a motion for, *inter alia*, disqualification based upon counsel's failure to provide notice of subpoenas pursuant to FRCP 45(b)(1). However, there, the court denied the motion, concluding that "disqualification would be too drastic in light of the nature of counsel's conduct, when considered with the effect it will have on [the defendant's] right to have her choice of counsel and the further cost and delay which may be engendered by a substitution of counsel at this stage of the litigation." *Dupuis*, 2007 WL 4201132 at *2. It is important to mention that, in *Dupuis*, counsel's conduct involved not only a failure to provide notice of served subpoenas, but also a disingenuous and persistent allocation of blame to another while arguing that notice was not required in the first place. *Id.* at *1.[9]

---

[9] In *Dupuis*, the court chastised counsel's argument in defense of his failure to provide the requisite notice, stating:

> If, as [the defendant's] current counsel now contends, the lack of notice was a simple over-sight on the part of counsel's clerk, then the problem should have been swiftly remedied when brought to his attention. However, [the defendant's] counsel refused to acknowledge that notice to the other parties was required by Rule 45.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 10**

While Defendants argue that Plaintiff's counsel's conduct is "more egregious" here, the opposite is, in fact, true.  Here, Plaintiff's counsel freely and candidly admits to his mistake, going so far as to say that he "has learned the mechanics of FRCP 45 the hard way" and that "[t]he mistakes of which the Defendants complain will never be repeated."  *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, p 18 (Docket No. 37).  Such *mea culpas* stand in stark contrast to the defendant's counsel's conduct in *Dupuis* which, as previously mentioned, did not warrant disqualification.  Because Plaintiff's counsel's conduct here is less egregious than that complained of in *Dupuis*, it is difficult to justify such a heavy sanction.[10]

---

> Instead, counsel demanded that counsel for Dupuis provide legal support for this requirement, and when he did so [the defendant's] counsel persisted in his view that notice was not required.  This required either a complete misunderstanding of the law on counsel's (and not his clerk's) part, or a willful failure to provide notice.  In either event, the error cannot be passed off as a simple clerical error on the part of counsel's clerk.

*Dupuis*, 2007 WL 4201132 at *1.

[10] Defendants' counsel attempts to distinguish Plaintiff's counsel's conduct here with the defendant's counsel's conduct in *Dupuis* in an attempt to persuade the court to order what the court in *Dupuis* did not.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 14 (Docket No. 27).  Specifically, Defendants argue that, unlike *Dupuis*, "we have multiple subpoenas issued without notice, outside of the district, seeking confidential and privileged information . . . ."  *Id*.  These distinctions are immaterial to this Court's recommendation.  First, in *Dupuis*, multiple subpoenas were also at issue.  Second, the alleged significance of out-of-district subpoenas does not register with this Court.  Either the subpoenas were issued properly or they were not; the fact that they were served outside the district does not affect this integral point.  Third, it is Plaintiff's counsel's conduct that may or may not taint the underlying trial - not the type of information sought.  Therefore, even though confidential medical information was sought via Plaintiff's subpoenas, this fact alone does not elevate Plaintiff's conduct into the realm of a serious ethical violation.  To be sure, neither *Allender* nor *Murphy* (two cases cited by Defendants dealing with the failure to provide notice of subpoenas seeking medical information), *supra*, held in favor of dismissal or disqualification.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 11**

Moreover, it should not go unnoticed that Plaintiff's lead counsel has extensive experience in trucking accident litigation and has spent a significant amount of time and resources prosecuting this case. *See* Aff. of Andrew M. Chasan in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss, ¶ 14 (Docket No. 38). In comparison, Plaintiff's local counsel has not devoted the time and energy to the case in the same way as lead counsel apparently has. *Id*. In other words, disqualifying Plaintiff's lead counsel at this juncture will clearly impinge on Plaintiff's right to have his choice of counsel and no doubt prejudice Plaintiff for reasons independent of the merits of this action.

To state, as Defendants do, that "[r]emoval of counsel should not be up for debate" and that "Defendants expect nothing less from this Court" is not only hyperbolic, but also borders on condescension. *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 15 (Docket No. 27). Yes, Plaintiff's counsel violated the notice requirements within FRCP 45(b)(1). However, Defendants' emphatic declaration that Plaintiff's counsel be disqualified for such a violation is not supported by the record before the Court or the case law offered in Defendants' briefing. Like dismissal, such an extreme sanction should be reserved only for the most egregious attorney misconduct. It cannot be said that Plaintiff's counsel's conduct rises (or falls, as the case may be) to that level. Therefore, Defendant's Motion to Dismiss (Docket No. 26) is denied in this respect.

**B.      Failing to Provide Notice Pursuant to FRCP 45(b)(1):  Evidentiary Sanction**

Defendants alternatively argue that (1) "any evidence of Mr. Nevarez's medical condition," (2) "the mention of Mr. Nevarez's medical condition," and (3) "evidence that was obtained or flowed as a result of the illegally issued subpoenas" should be excluded/precluded at

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 12**

trial.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 15 (Docket No. 27).  While inventive, little authority exists that would permit the Court to apply this "fruit of the poisonous tree" argument to the civil context of the instant motion.  *See, e.g.*, *Townes v. City of New York*, 186 F.3d 138, 145 (2nd Cir. 1999) ("The fruit of the poisonous tree doctrine is an evidentiary rule that operates in the context of criminal procedure . . . . The doctrine is an extension of the long-recognized exclusionary rule and as such has generally been held 'to apply only in criminal trials.'" (internal citations omitted)); *see also Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 381 (D. Md. 1999) ("[T]he court does not believe it appropriate to grant the relief sought by defendants in their Motion for Protective Order, that is, that plaintiff be directed to return the documents to the third parties and be precluded from using the documents at trial.").

     Defendants' related argument that such information is not relevant and, therefore, should not be used at trial, is the subject of Plaintiff's Motion to Compel (Docket No. 16).  To the extent resolution of that Motion does not adequately resolve the Defendants' concern in this specific extent, Defendants are certainly permitted to raise additional evidentiary objections leading up to trial.  At this stage, with a July 2009 trial date, the Court is in no position to rule upon the admissibility (as opposed to relevance) of evidence.  That is, such efforts are better reserved closer to trial and, perhaps, by the Judge who will actually be presiding over the parties and the evidence at trial.  Therefore, Defendant's Motion to Dismiss (Docket No. 26) is denied in this respect.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 13**

**C.    Failing to Provide Notice Pursuant to FRCP 45(b)(1):  Monetary Sanction**

As an alternate sanction, Defendants argue that a monetary sanction should be imposed upon Plaintiff for his counsel's conduct.  *See* Mem. in Supp. of Mot. to Dismiss, p. 16 (Docket No. 27).  This Court agrees.  Numerous cases exist supporting the notion that a violation of FRCP 45(b)(1)'s notice requirement is appropriately sanctioned in the amount of the expense associated with bringing the offensive conduct to the Court's attention.  *See supra*, p. 6, n. 7.  Even though Plaintiff's counsel's failure to provide the requisite notice was not made in bad faith, it is a violation nonetheless.  To now saddle Defendants with the expense directly associated with Plaintiff's counsel's violation is unfair, especially in light of the additional fact that Defendants were indeed deprived of the opportunity to object to the information sought within the subpoenas.  These expenses should be borne by Plaintiff's counsel, not Defendants.  Therefore, while it is not recommended that Defendants' Motion to Dismiss (Docket No. 26) be granted in the strict sense, it is recommended that its related request for monetary sanctions be granted in this limited respect.

With all these considerations in mind, the Court orders that, on or before July 16, 2008, Defendants' counsel supply the Court and opposing counsel with an affidavit itemizing the time and expenses associated with successfully litigating the issue of Plaintiff's improper service of the at-issue subpoenas.[11]

---

[11] The Court is reluctant to recommend an award amounting to the entire expense associated with Defendants' Motion to Dismiss (Docket No. 26).  Considering that Defendants' Motion to Dismiss (Docket No. 26) devotes the majority of its eighteen pages to relief not endorsed here, it seems a hasty sanction to require Plaintiff's counsel to account for such unsuccessful efforts.  This confluence of factors should be taken into account when seeking any monetary sanctions award and will, in turn, be taken into account when rendering any such award.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 14**

**D.      Failing to Provide Notice Pursuant to FRCP 45(b)(1): Other Sanctions**

Lastly, Defendants alternatively argue that Plaintiff be required to advise Defendants of the intended use of the materials received through the subpoenas. *See* Mem. in Supp. of Mot. to Dismiss, p. 17 (Docket No. 27). However, Defendants' reliance on *Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372 (D. Md. 1999), in this respect is misplaced.

First, while the court in *Potomac Electric* ordered the relief that Defendants propose here, it did so because the discovery deadline already expired. *See Potomac Elec.*, 190 F.R.D. at 381 ("In order to alleviate any possible prejudice to the defendants as a result of the production by plaintiff of the third party documents after the discovery deadline . . . .") Here, the discovery deadline is February 9, 2009. *See* Scheduling Order, p. 2 (Docket No. 15). Therefore, the rationale for the remedy ordered in *Potomac Electric* does not apply to this matter. Defendants have more than enough time to conduct discovery related to the significance of information produced through the subpoenas and, likewise, develop a corresponding strategy for either later seeking to preclude such information at trial or, alternatively, responding to such arguments generated as a result of such information's introduction at trial.

Second, on a more practical note, it is likely no secret what Plaintiff intends to do with the information sought in the subpoenas to Defendant Nevarez's medical provider; to be sure, Plaintiff has relayed as much in his briefing on the Motion to Compel and the instant Motion to Dismiss. It appears clear that Plaintiff seeks to argue that Defendant Nevarez was somehow impaired (either through the use of medication or not using prescribed medication) at or around the time of the accident, thus contributing to the cause of the accident and/or allocation of liability. *See, e.g.*, Pl.'s Resp. to Defs.' Mot. to Dismiss, pp. 4,10, & 11 (Docket No. 37).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 15**

Beyond that, it is difficult to imagine what more Defendants seek to understand about the Plaintiff's alleged interest in Defendant Nevarez's medical condition leading up to the accident.

To the extent any information is produced through the at-issue subpoenas (or any future subpoenas), such information should also be produced to opposing counsel. *See* Mem. in Supp. of Defs.' Mot. to Dismiss, p. 16 (Docket No. 27). Further, notwithstanding the comments above, revealing counsel's strategic or tactical intent as to any of the improperly obtained medical materials is not a significant penalty and will be required here. To this end, Plaintiff shall disclose to Defendant in general terms the intended use of such information on or before July 16, 2008. Therefore, Defendant's Motion to Dismiss (Docket No. 26) is granted in this respect.

## IV. RECOMMENDATION AND ORDER

In accordance with the foregoing, it is RECOMMENDED that the District Court enter an order consistent with the following:

1. Defendant's Motion to Dismiss (Docket No. 26), to the extent it seeks a dismissal of Plaintiff's claims, be DENIED.

Moreover, in accordance with the foregoing, it is hereby ORDERED that:

1. Defendant's Motion to Dismiss (Docket No. 26), to the extent it seeks Plaintiff's counsel's disqualification, is DENIED.

2. Defendant's Motion to Dismiss (Docket No. 26), to the extent it seeks the exclusion of evidence, is DENIED.

3. Defendant's Motion to Dismiss (Docket No. 26), to the extent it seeks monetary sanctions, is GRANTED with Defendant to submit an affidavit as to the attorneys' fees associated with successfully litigating the issue of Plaintiff's improper service of the at-issue subpoenas on or before July 16, 2008.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 16**

4. Defendant's Motion to Dismiss (Docket No. 26), to the extent it seeks to compel Plaintiff's counsel to generally advise Defendants of the intended use of the materials received through the subpoenas is GRANTED. Plaintiff shall provide said disclosure on or before July 16, 2008.

It is FURTHER ORDERED that any information produced as a result of any parties' subpoenas be produced to opposing counsel. Additionally, to the extent any party's confidential information, including, but not limited to, medical information, is filed with the Court, the parties shall meet, confer, and enter into a stipulated protective order detailing the handling of such information.



DATED: **July 3, 2008**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 17**