**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| DOUGLAS W. DAVIS, | ) | Case No. 3:07-CV-00427-EJL-LMB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| vs. | ) | **AND ORDER** |
| | ) | |
| MARIO A. NEVAREZ and | ) | |
| SWIFT TRANSPORTATION CO., INC., | ) | |
| a Nevada corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Currently pending is Plaintiff's Motion to Amend Complaint to Add a Prayer for Punitive Damages (Docket No. 87) and Motion to Strike Paragraph 11 of the Declaration of Dennis Richie in Opposition to Plaintiff's Motion to Amend Complaint (Docket No. 102). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**MOTION TO STRIKE**

Plaintiff filed a Declaration of Swift's 30(b)(6) witness in support of Plaintiff's motion to amend. Swift moves to strike one paragraph of the Declaration on the basis that paragraph recreates the witness's deposition testimony and is not timely disclosed. As set forth below, the Court agrees and grants the motion to strike.

Dennis Ritchie was produced for deposition as Swift's 30(b)(6) witness on December 31,

MEMORANDUM DECISION AND ORDER - 1

2008.  During the deposition he was questioned about the Safety Department Driver Review of

Nevarez (*see Motion to Strike*, Exh. B, Docket No. 102-3, p. 2) which lead to the determination to

terminate his employment.   The review document states, in relevant part, that Nevarez has "24

Log violations within 6 months (or since hire date)."  *Id.*  Ritchie was asked during deposition if

there was any way to determine the severity of the log violation(s) stated in the review, which

Plaintiff argues that Ritchie unequivocally denied.

Subsequently, Defendants provided a Declaration from Ritchie in support of their

opposition to Plaintiff's Motion to Amend in which Ritchie opines regarding the nature of the log

violations.  Ritchie declared that he recently reviewed the Driver's Daily Logs from May 15 to

June 28, 2006, and determined that the 24 log violations noted on the Safety Department Driver

Review were the result of Nevarez failing to sign his log indicating that he had inspected his

vehicle on 24 different dates.  *See* Declaration of Dennis Ritchie, ¶ 11, (Docket No. 91-020, p. 4).

Defendants offer the declaration as evidence that the Log Violations were minor infractions and

accordingly, do not support any basis for an award of punitive damages.

Plaintiff argues that Ritchie's declaration is contrary to his deposition testimony that there

was no way to determine the nature of the log violations.  Plaintiff argues that Swift should not be

allowed to recreate the testimony after he relied on the previous answer for his expert reports and

in forming the theory of his case.   Plaintiff requests that the Court strike the inconsistent

testimony because of its late disclosure and also that it is unduly prejudicial.

MEMORANDUM DECISION AND ORDER - 2

During Ritchie's deposition, the specific question and answers on this topic were as

follows:

> Q:  So there's no way of determining, is there, the severity of the individual
> logging violations?
> A:  No, not from this report.
> Q:  Is there any way of determining that from the qualifications file?
> A:  No, sir.
> Q:  Is there any reason that reviewer's not required to record the nature of the
> violations?
> A:  No.  Based on the reviewer's review, all they want to know is the number of
> violations during a period of time for them to use that to determine the results of
> what to do with the driver.
> Q:  Is that part of policy?
> A:  That's part of the process.
> Q:  Well, I don't understand that answer.
> A:  The process from a reviewer on an accident would be to review the number of
> log violations only.  We consider the log violation to be the same whether, it's
> minor or major.
> . . .
> *With regard to the type of violations, that information is sent to the driver*
> *manager to review with the driver.*
> . . . .
> Q:  So he's been with the company for more than 30 days.  So that report should
> have gone to the driver manager?
> A:  Yes, 30 days after employment if there were violations in that period of time.
> Q:  Well, there either had to be violations showing overspeeds and log violations,
> or they all happened within the last two weeks?

*Motion to Strike,* Exh. C, pp. 80, L.7 - 83, L. 1 (Docket No. 102-4, pp. 3-4 ) (emphasis added).

Ritchie also testified in his deposition that there was no document in Swift's file on Nevarez that

revealed the nature of the logging violations or that an audit of the violations had been done.  *Id.*

Plaintiff concludes from the combination of these two areas of deposition testimony that Ritchie,

Swift's 30(b)(6) witness, testified that there was no way that anyone could determine the nature of

the logging violations listed on Nevarez's Driver Review.

MEMORANDUM DECISION AND ORDER - 3

The Court does not agree that the deposition testimony cited supports the conclusion that Ritchie testified that there is "no way" that Swift could determine the nature of the log violations. Considered in context, Ritchie was obviously referring to the information that could be gleaned from the review report or process itself.  Ritchie testified expressly in his deposition that the information as to the nature of the violation was forwarded to the driver manager to review with the driver. *See Motion to Strike*, Exh. B, Ritchie Depo, p. 80, Ls. 4 - 7 (Docket No. 102-4, p. 3). That testimony itself informed Plaintiff that the information on the nature of the violations must have been available in some format to be forwarded to the driver.  Ritchie further testified that the logs were audited daily, but the results were not forwarded to the file until there was a certain amount of information collected, usually 30 days.  The fact that no audit summary was in the file does not lead to the conclusion that there is no information available regarding the nature of the violations.  Common sense suggests that the logs themselves would reveal the nature of the logging violations.

Nonetheless, it is also clear from the record that the information regarding the nature of the logging violations could be relevant, and if Swift intended to rely on facts regarding this information, it should have disclosed them, particularly after knowing that Plaintiff sought that information in discovery.  It appears that Swift's original view of that fact was that the nature of the violations was irrelevant, and the Court finds that the new information is disclosed too late to be considered for its offered purpose at this time.  The Court also finds and thus concludes that even if the Court did consider the testimony for the purposes of the pending Motion to Amend, it would not change the Court's decision because of Swift's testimony that all logging violations are

MEMORANDUM DECISION AND ORDER - 4

considered equally, regardless of the severity, for the purposes of Driver Review.  *Motion to Strike*, Exh. C, p. 80, Ls. 22 - 25 (Docket No. 102-4, p. 3).

Accordingly, although the Court disagrees that Ritchie's deposition testimony conclusively establishes that the nature of the violations could not be determined, the Court will grant the Motion to Strike ¶11 of Ritchie's Declaration.  The Court offers no opinion whether similar testimony on this issue should or should not be excluded at trial since the parties have time to attempt to remedy the potential prejudice resultant from the late or improper disclosure.  The Court now addresses the Plaintiff's Motion to Amend.

## MOTION TO AMEND

**A.    Factual Background**

On June 28, 2006, Nevarez was driving a Swift tractor-trailer east-bound on Highway 12 near the Idaho-Montana border.  Highway 12 is a two-lane roadway bordered on the west-bound side by a steep mountain wall and on the eastbound side by a 40 to 45 degree drop off into the Lochsa River.  *Affidavit of Andrew Chasen in Support of Plaintiff's Motion and Brief to Amend Complaint to Add a Prayer for Punitive Damages* (Docket No. 87-2) (hereafter, "*Chasen Affid.*"), Exh. 1, Report of Accident Reconstructionist Dennis Andrews.  The posted speed for Highway 12 is 50 mph.  Nevarez came into a curve with a posted advisory speed of 40 mph traveling too fast[1] crossed over into the westbound lane and forced another commercial vehicle off of the road.  Both vehicles lost control and landed in the river below.  *Id.*

Plaintiff was a passenger in the other vehicle.  He brought this action against both Swift and Nevarez for the bodily injuries and damages caused by the accident.  He now seeks to add a

---

[1]Nevarez told the police officer at the scene that he was traveling 55 mph.

MEMORANDUM DECISION AND ORDER - 5

claim for punitive damages against Swift for negligent hiring and supervision of Nevarez, and against Nevarez for his conduct that caused the accident.

On May 8, 2006, Nevarez applied with Swift to be hired as a commercial driver. The Federal Motor Carrier Safety Regulations (FMCSRs) require commercial motor vehicle drivers to submit to a physical exam and to be certified as physically qualified and able to be a driver. 49 CFR § § 391.11(b)(4) & 391.43. A person is not physically qualified to drive a commercial vehicle if a mental or psychiatric disorder, among others, is likely to interfere with his or her ability to drive safely. 49 CFR § 391.41(b)(9); DOT Interpretations - 391.41, Question 1. The FMCSRs Advisory Criteria recommends, but does not require, that a person with a psychiatric disorder be examined by a qualified psychiatrist.

When he applied for employment at Swift, Nevarez filled out a medical exam report and disclosed that he had schizophrenia and bipolar disorder and was taking four different psychotropic medications. *Chasen Affid.*, Exh. 4, Personnel File, Swift 1024. Nevarez also disclosed that he was being treated by El Paso MH & MR. *Id.* Swift referred Nevarez to an Advanced Practice Nurse Practitioner to be examined per the regulations. *Chasen Affid.*, Exh. 5; Ritchie Depo., p. 47:2 - 6. The nurse practitioner examined Nevarez and gave him a limited certification of six months (out of a possible two years) due to his psychiatric disorder. *Chasen Affid.*, Exh. 4, Personnel File, Swift 1027.

Because of his psychiatric conditions, to be "extra safe," Swift also required Nevarez to obtain an additional medical clearance from his own physician. *Chasen Affid.*, Exh. 5; Ritchie Depo., pp. 49:2 - 15; 52:2 -24. Nevarez submitted a "Return to Work in Progress" form on May 9, 2006, signed not by a physician from El Paso MH & MR, but by Dr. Pimentel, a physician in

MEMORANDUM DECISION AND ORDER - 6

Mexico.  *Chasen Affid.*, Exh. 4, Swift 1029, 1030; Exh. 5, Ritchie Depo., pp. 53:21 - 25; 53:1 -

11.  Dr. Pimentel had an office close to the El Paso Swift terminal and was known by Swift.   The

doctor stated, in Spanish:  "Schizophrenic Bi-Polar - is being treated with good results."  *Chasen*

*Affid.* (Docket No. 87), Ex. 4, Personnel File, Swift 1029, 1030.

　　　When he applied, Nevarez was required to also submit a verification for any time period

in which it appeared from his employment application that he had been unemployed.  He

submitted two verifications from neighbors that stated that he had been unemployed from 2002.

The verifications, however, on their face were inaccurate and contradicted Nevarez's application.

He had listed that  he had been employed and terminated from another trucking company in

September 24, 2003.   There is some dispute in the record as to whether Nevarez also was

employed when he was involved in an "over-turn" accident in which he was driving a commercial

motor vehicle, and received a speeding violation stemming from the accident on November 25,

2003.  In any event, the record seems to support that Nevarez's employment application contained

false information that could be viewed reasonably as Nevarez attempting to conceal his history.

Swift made no inquiry into why Nevarez had allegedly been unemployed for the substantial time

period or to investigate the inconsistencies between his application, the verifications, and/or the

turn-over accident involving a commercial motor vehicle.

　　　 Swift did conduct a full investigation of Nevarez's commercial driving record, however,

which revealed that he had been involved in five preventable accidents over a four-year time

period.  The FMCSRs require only that Swift consider the last three years of a driver's record,

however.  Nevarez was supposedly un-employed during most of that time period, but the latest

accident involving a "turn-over" of a commercial vehicle and a speeding violation against

Nevarez, occurred within the three year time period.   A "turn-over" is one of "five forbidden accidents" which, according to Swift "are historically most likely to cause injury or death" and "most always preventable due to the basic safety protocols," *Chasen Affid.*, Exh. 10, Swift Drivers Manual, Swift709; and, according to a former Swift driver-manager, would result in immediate termination of the driver. *Chasen Affid.*, Exh. 12, Cardenas Depo., p. 22:6-19.

Nevarez's employment history indicated that Nevarez had nine short periods of employment as a commercial truck driver over three years and was fired from three of the jobs. Chasen Affid., Exh. 9, Atkinson Report, p. 8, ¶ F.   Five of the employment periods lasted less than one month, one less than a day.  *See Chasen Affid.*, Exh. 4, Personnel File, Swift 257, 258, 329.   In addition, between the short periods of unemployment were long periods of unemployment that were unexplained.  *Chasen Affid.*, Exh. 9, Atkinson Report, p. 8, II.G, and Example F.

Despite his mental health conditions, the lack of any information about his condition from his medical treatment provider, the what appears to be false information and discrepancies in his application regarding his prior employment and his driving history, and his actual driving history, Swift hired Nevarez on May 15, 2006.  Plaintiff's industry safety expert, Arthur Atkinson, opines that Swift's hiring of Nevarez considering all of these circumstances, constituted gross negligence, and an extreme deviation from the industry standard.  He opined that in fact, Nevarez's employment history alone would have indicated to a person experienced and concerned about commercial truck driving safety that "Nevarez probably possessed an unstable, reactionary, impulsive, or risk-taking personality that would generally not contribute to safe driving behavior."  *Chasen Affid.*, Exh. 9, Atkinson Report, p. 8, II.F.

MEMORANDUM DECISION AND ORDER - 8

At the time Nevarez was hired, the trucking industry was experiencing both acute and chronic driver shortages, and a turnover rate of 85% to 110%. *Chasen Affid.*, Exh. 5, Ritchie Depo.,  pp. 37:1 -18;  Exh. 11, Welsh Depo.,  pp. 21 - 25; Exh. 9, Atkinson Report, p. 5, II.A.   In May 2006, Swift transferred the responsibility for ensuring driver qualifications and hiring from its safety department to "recruiters," and their assistants ("processors"), who were paid an incentive bonus for every driver they could locate, hire and retain. *Chasen Affid.*, Exh. 5, Ritchie Depo., p. 32:20 - 25, 33:1 - 25, 34:1-13.   There is no indication in the cited record as to the type of training or skills the recruiters were required to have, if any, relating to identifying indicators that a driver posed a safety risk or was otherwise unqualified to serve as a commercial driver.

Juan Cardenas was Nevarez's driver-manager.  The driver-manager role is instrumental in Swift's safety protocol.  Swift evaluates a driver's condition through daily contacts with the driver-manager, and the driver-manager contacts the safety department with any perceived safety problems. *Response to Motion*, p. 19 (*citing Chasen Affid.*, Exh. 5, Ritchie Depo., p. 104:8-20.) The driver-manager is responsible for the day-to-day operations of the drivers, and the safe operation of the Fleet. *Chasen Affid.,* Exh. 12, Cardenas Depo., pp. 13:18 - 15:3; Exh. 5, Ritchie Depo., pp. 69:2-9; 94:5-9; Exh. 13, Swift 1129; Exh. 10, Driver Manual, Swift 740.)

Cardenas testified in his deposition that he had no knowledge of  Nevarez's psychiatric disorders, or that he was taking prescribed psychotropic medications, had a six-month limited certification, or a prior accident or commercial driving history. *Chasen Affid.*, Exh. 12, Cardenas Depo., 57 - 59, 62 - 64, 69 - 71, 87 - 88.  Swift does not dispute Cardenas's testimony in this regard.  Cardenas further testified that had he known of these facts, he would have questioned

MEMORANDUM DECISION AND ORDER - 9

why Swift re-hired Nevarez, and would have supervised Nevarez much more closely.

Specifically, he would have kept Nevarez closer, in the El Paso area, to monitor him. *Id.*

Instead, the record before the Court reveals that Cardenas had little contact with or information about Nevarez during his approximately six-week employment period with Swift. During this six-week period, Nevarez had 24 log violations, 13 over-speeds and one negative road report from another commercial driver who called into Swift and reported that Nevarez was crossing on a double-yellow line and running other drivers off the road.

Despite company policies and procedures regarding supervision of a probationary employee and forwarding information about a driver to the driver-manager, Cardenas was not notified of the 24 log violations, 13 over-speeds or the negative road report that was called into Swift until after Nevarez was involved in the accident that gives rise to this court action. Cardenas testified in his deposition that the negative road report was about as bad a report a driver could get, short of an accident report, and that immediate action would have been warranted. He did not learn of the negative road report until six days after the report was received, which was two days after the accident that gives rise to this pending action, when he conducted Nevarez's Driver Review. Both incidents were considered as factors leading to the termination of Nevarez's employment on June 30, 2006.

**B.     Standard of Law for Motion to Amend**

Claims for punitive damages are substantive and Idaho law is controlling. *See Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005) ("[W]hether to permit a claim for punitive damages is substantive in nature and accordingly is controlled by relevant Idaho case law." (*citing Doe v. Cutter Biological*, 844 F. Supp. 602, 610 (D. Idaho 1994))).

MEMORANDUM DECISION AND ORDER - 10

Idaho Code § 6-1604 directs the court to grant a motion to amend to seek punitive damages if, "after weighing the evidence presented, the court concludes that, the moving party has established . . . a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  Idaho Code Ann. § 6-1604 (2003).  An award of punitive damages is permissible only where the claimant proves, "by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted."  *Id.*

As a matter of substantive law, it is well established in Idaho that punitive damages are not favored and should be awarded only in the most unusual and compelling circumstances, and are to be awarded cautiously and within narrow limits.  *Manning v. Twin Falls Clinic & Hosp., Inc.*, 122 Idaho 47, 830 P.2d 1185 (1992); *Jones v. Panhandle Distributors, Inc.*, 117 Idaho 750, 792 P.2d 315 (1990); *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986); *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983); *Linscott v. Rainier National Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980); *see also O'Neil v. Vasseur*, 118 Idaho 257, 796 P.2d 134 (Ct. App. 1990).

An award of punitive damages will only be allowed when the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences."  *Manning*, 830 P.2d at 1190 (*quoting Cheney*, 665 P.2d 661).  Further, the Supreme Court of Idaho has clearly defined the parameters of such an award, and has stated that "to support an award of punitive damages, [plaintiff] must prove [defendant's] actions toward [plaintiff] constituted an extreme deviation from standards of reasonable conduct, which was done with knowledge of the

MEMORANDUM DECISION AND ORDER - 11

likely consequences and an extremely harmful state of mind." *Seiniger Law Office, P.A. v. North Pacific Ins. Co.*, 145 Idaho 241, 178 P.3d 606, 615 (2008).  In other words, "[t]he issue revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC.*, 146 Idaho 118, 191 P.3d 196 (2008) (citing *Myers v. Workmen's Auto. Ins. Co.*, 140 Idaho 495, 503, 95 P.3d 977, 985 (2004)).

When the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, a motion to amend to assert punitive damages will not be allowed.  *See Strong*, 393 F. Supp. 2d at 1026 (finding plaintiff had not established reasonable likelihood of proving by preponderance of evidence[2] "the requisite 'extremely harmful state of mind' and 'extreme deviation from reasonable standards'" because of conflicting evidence) (citing *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1187 (9th Cir. 2004)).

Idaho state courts have also made clear that, with respect to punitive damages claims, the decision whether to submit the punitive damages question to a jury rests within the sound discretion of the trial court.  *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992) (citing *Hoglan v. First Sec. Bank*, 120 Idaho 682, 819 P.2d 100 (1991)); *Eddins Constr., Inc. v. Bernard*, 119 Idaho 340, 806 P.2d 433 (1991).  In this respect, the federal courts are in accord with Idaho state substantive and procedural law.  *Foman v. Davis*, 371 U.S. 178 (1962).

---

[2] *Strong* involved Idaho Code § 6-1604's "preponderance of the evidence" standard before its amendment in 2003.  Section 6-1604 now places a higher burden on the moving party, i.e., a requirement for "clear and convincing evidence."  *See also* BLACK'S LAW DICTIONARY 596 (8th ed. 2004) ("clear and convincing evidence . . . .  This is a greater burden than preponderance of the evidence . . . .")  The *Strong* standard remains applicable.  That is, if the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, the moving party has not met its burden.

MEMORANDUM DECISION AND ORDER - 12

Federal Rule of Civil Procedure 15(a) encourages the liberal granting of motions to amend pleadings.  However, whether to amend the pleadings to assert a claim for punitive damages is another matter, requiring a different standard as is consistently reflected in the significant case law in this jurisdiction.  *See, Todd* 191 P.3d 196; *Hall v. Farmers Alliance Mut. Ins. Co.,* 145 Idaho 313, 179 P.3d 276 (2008); *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 95 P.3d 34 (2004); *Vaught v. Dairyland Ins. Co.,* 131 Idaho 357, 956 P.2d 674 (1998); and *O'Neil*, 796 P.2d 134 (stating that "[p]unitive damages are not favored in the law and should only be awarded in the most unusual and compelling circumstances.").

As the case law reflects, a plaintiff will be allowed to amend the pleadings to assert a claim for punitive damages only if, after weighing the evidence presented, the Court concludes that Plaintiff has established a reasonable likelihood of proving, by clear and convincing evidence, that Defendants' conduct was oppressive, fraudulent, malicious, or outrageous.  *See Vendelin*, 95 P.3d at 41.  "Clear and convincing evidence is generally understood to be [e]vidence indicating that the thing to be proved is highly probable or reasonably certain." *State v. Kimball*, 145 Idaho 542, 181 P.3d 468, 472 (2008) (internal quotations omitted).

**C.    Analysis**

Plaintiff moves to amend his complaint to add a prayer for punitive damages against Swift for its negligent hiring and negligent supervision of Nevarez.   Plaintiff also moves to add a prayer for relief for punitive damages against Nevarez for his conduct in relation to the accident.

**1.    Motion to Amend to Add Prayer for Punitive Damages Against Swift**

Plaintiff contends that Swift's conduct in hiring Nevarez was outrageous and constituted gross negligence based on his (1) psychiatric disorder, (2) falsification of his employment

application and employment history, (3) driving record and (4) employment history.  Because of these factors, Plaintiff argues that hiring Nevarez to drive a commercial vehicle was an extreme deviation from the applicable industry standard of care that supports an award of punitive damages.  Plaintiff further alleges that Swift's failure to supervise Nevarez under the circumstances of Nevarez's mental health condition and driving and performance history also constituted an extreme deviation from the industry standard of care and further supports an award of punitive damages.

The Court agrees and concludes that the evidence on the record recited above shows that Plaintiff has a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages against Swift for its hiring and supervision of Nevarez.

### a.  Swift's Negligent Hiring of Nevarez

Plaintiff argues and supports with expert testimony that Nevarez's his medical condition, falsifications and inconsistencies in his employment application, driving, accident and employment record rendered Nevarez ineligible for hire, and that Swift's conduct in hiring Nevarez constituted an extreme deviation from the industry standard.  Accordingly, Plaintiff argues that Swift's conduct in hiring Nevarez supports a claim for punitive damages.

Swift does not address the fact that its own policies prohibit some of the conduct on Nevarez's application record that Plaintiff argues made Nevarez ineligible for hire.  Swift contends, though, that there were no policies or regulations specifically prohibiting it from hiring Nevarez under the then existing circumstances.  Swift's umbrella argument is that because it met the minimal requirements in hiring Nevarez that were prescribed by the applicable rules and regulations, it cannot be subject to an award of punitive damages.

MEMORANDUM DECISION AND ORDER - 14

Specifically, Swift disputes that it committed any conduct in hiring Nevarez that warrants either an amendment to allege or an award of punitive damages.  In fact, Swift argues that it went above and beyond what was required by the regulations by having Nevarez submit to a second medical exam, by "his own" doctor.  *See Chasen Affid*., Exh. 5, Ritchie Depo.  (Docket No. 84-6).  Swift argues further that no regulations prohibit hiring an individual simply on the basis that he or she has a psychiatric disorder and that there was no evidence the Nevarez's disorders were active at the time that he was hired such that his driving ability would be adversely affected.  Finally, Swift contends that the six-months limited certification was a reasonable response to the circumstances.[3]

With respect to the problems with Nevarez's application, Swift responds that accepting an application that contains false statements does not violate any regulation or law.  Swift further argues that it did not ignore Nevarez's history but instead did a complete investigation of his commercial driving record, and independently learned the additional information not disclosed on

---

[3]Plaintiff takes issue with Swift's reliance on the nurse practitioner and the Mexican physician and arguing that it constituted an extreme deviation from the standard of care that warrants punitive damages.  Plaintiff argues that had Swift done a reasonable investigation of Nevarez's medical condition, which would have included obtaining certification from his treatment provider,  El Paso MH & MR, it would have learned that Nevarez was not fit to drive a commercial vehicle.  Plaintiff argues that, based on El Paso MH & MR facility medical records and notes, Swift would have learned that Nevarez had been in drug rehabilitation for cocaine use only six months prior, and was in possession of cocaine and marijuana just a month prior to his application.  The Court does not consider what Swift would have learned in granting the motion to amend.  There is no evidence on the record as to what information would have been provided to Swift had it contacted El Paso MH & MR.  Plaintiff's argument that Swift would have learned of all of the facts contained in Nevarez's records is speculative.  Likewise, the Court does not consider in this ruling as it pertains to Swift, Dr. Worst's opinion that Nevarez was actively psychotic when employed by Swift to the extent it is based on Nevarez's prior employment history that was not known to Swift.

his application.  *See Chasen Affid.*, Exh. 4, Personnel File, pp. 3–14 (Docket No. 84-5); Exh. 5,

Ritchie Depo.  (Docket No. 84-6).

Finally, Swift repeats that it violated no rule or regulation in hiring Nevarez based on his

driving or employment record and that there is no policy that states that a person would not be

hired or would be terminated for a particular type of accident, though Swift would weigh it

heavily in a safety review of the driver, or based on Nevarez's employment record.  In addition,

Swift maintains that the FMCSRs requires only that it consider the last three years of a driver's

record, and only one of the accidents—that most recent obviously —fell within that time frame.

Accordingly, Swift argues that evidence is insufficient to support a finding that punitive damages

may be alleged based on hiring Nevarez in light of his driving record and history.

The Court disagrees with Swift's basic legal contention that because there were no

regulations or statutes specifically prohibiting hiring Nevarez, that an allegation for or an award

of punitive damages may not be allowed.  The issue in this case is the standard of care exercised,

and based on the record Swift could fall so below the industry standard of care in an area not

dictated by a specific rule so as to constitute gross negligence and outrageous conduct.

A reasonable conclusion under these facts is that so long as Swift was complying with the

letter of the regulations, it approved a driver's application regardless of the many warning signals

and common sense risks attendant to the application.  It is difficult to imagine, for the purposes of

allowing an amendment to allege punitive damages, an applicant with more warning signs of a

safety risk than those raised by Nevarez's application.  Plaintiff has provided sufficient evidence

for the Court to conclude, for the purposes of allowing an amendment, that he could meet his

MEMORANDUM DECISION AND ORDER - 16

burden in establishing that Swift's action in  hiring Nevarez was outrageous and grossly

negligent.        **b.        Swift's Negligent Supervision of Nevarez**

Plaintiff contends that after hiring Nevarez with a known mental health condition, and his

employment and driving record, Swift failed to supervise him to such an extent as to constitute an

extreme deviation from the industry standard that punitive damages may be awarded.

Swift does not address the fact that Nevarez's supervisor was given no information about

Nevarez's psychiatric disorder or medications or recent "over-turn" accident and history of

speeding violation.  Swift only addresses Swift's handling of the negative road report, which it

contends was not in violation of any law or regulation.  Swift argues that the negative road report

was dealt with within a reasonable time frame, only six days after the report, which was also two

days after the accident giving rise to this action.  Swift contends it had a safety protocol in place

which required, among other things, that the driver-manager would be alerted to talk to the driver

and address the report, and that the failure of this protocol in this case does not justify an award of

punitive damages.  The Court disagrees on this point.

Based on a careful review of the record, there is no evidence contradicting Plaintiff's

allegations that Swift failed to adequately supervise Nevarez.  Cardenas was charged with

ensuring Nevarez upheld safe driver standards, but he, Cardenas, apparently possessed none of

the information he reasonably would have needed to fulfill this responsibility.  In particular,

Cardenas did not know that Nevarez had two serious psychiatric disorders, was taking four

different psychotropic medications to treat them and  was given a very limited six-month

certification because of his psychiatric disorders.  Further, Cardenas did not know that Nevarez

had 24 Log Violations, 13 over-speeds or a negative road report that he was driving very

MEMORANDUM DECISION AND ORDER - 17

dangerously.  Nevarez was hired to drive a semi- tractor pulling a 53 foot trailer across the country in public transit, and his direct supervisor was provided none of this pertinent information.

Likely as a result, despite the company policies in place that Nevarez would have been more closely monitored (being on probation and with a limited certification because of his mental health issues), Nevarez received apparently very little, if any, individual monitoring, even after Swift received a negative road report that Nevarez was driving dangerously.  The preponderance of the evidence in the Court's record supports that a jury could conclude, under the clear and convincing standard, that Swift was aware of and disregarded circumstances that posed a substantial risk to the safety of other drivers, that the failure to supervise him accordingly was an extreme deviation from the reasonable standards of conduct and grossly negligent and contributed to the accident.   Plaintiff's motion to amend to add a claim and prayer for relief for punitive damages against Swift shall be granted.[4]

### 2.      Punitive Damages Allegation Regarding Nevarez

Plaintiff alleges that Nevarez's reckless conduct caused the accident in this case, and is sufficiently outrageous to warrant an award of punitive damages against Nevarez personally. Plaintiff relies on the report of his trucking industry safety expert , Arthur Atkinson, who concludes that since the first day his employment, Nevarez demonstrated a pattern of unsafe, noncompliant and reckless conduct.   Atkinson relied on the evidence that Nevarez had 24 log

---

[4]Swift seems to suggest that the Court must look at each circumstance or allegation independently to determine if the independent action, or inaction, was sufficient to establish a basis for punitive damages.  To view each fact in a vacuum would result in a distorted picture of the circumstances regarding Swift's cumulative knowledge of Nevarez and the risks he posed as a commercial driver.

MEMORANDUM DECISION AND ORDER - 18

violations, 13 over-speeds, the facts of the negative road report and other incidents of similar

driving that were reported on the day of the accident.  The first incident of bad driving reported

on

the day of the accident occurred only hours before the accident.  *Chasen Affid.*, Exh. 6, Affidavit

of Michelle Klompien.  A witness reported having seen Nevarez cross a double-yellow line, on a

curve, to pass another semi-tractor tailor that was pulling two trailers of lumber.  *Id.*  The second

incident occurred immediately before the accident; another witness reported seeing Nevarez tail-

gating a passenger car, forcing the car to excel to 60 mph in a 50 mph speed zone and forcing

both the passenger car and the car in front of it off the road ultimately.  *Chasen Affid.,* Exh. 7,

Affidavit of Joe Brooks.

 Atkinson also relies on the facts of the accident itself including that Nevarez was driving a

70 foot, 800,000 lbs vehicle traveling 55 mph into a curve with an advisory speed of 40 mph, and

the speed limit for 50 mph.[5]  Atkinson concludes that Nevarez acted with gross negligence and in

extreme deviation from the industry standard of care, and caused the accident at issue in this case.

 Plaintiff's accident reconstructionist, Dennis Andrews, agrees and opines that Nevarez's driving

behavior was the cause of the accident.  *Chasen Affid.*, Exh. 1, p. 6.  "Mr. Nevarez was driving in

---

  [5] Atkinson also relies on  Nevarez's failure to submit to a post-accident drug test.
Plaintiff appears to argue that certain instances of conduct after the accident support an award of
punitive damages against the defendants for the injuries allegedly sustained by the accident.   For
example, Plaintiff refers to the fact that Swift failed to conduct routine drug testing on Nevarez
following the accident.  As another example, Plaintiff argues that Swift continued to allow its
drivers to drive on Highway 12 for two months following the accident despite its Lewiston,
Idaho terminal operator advising against it.   Plaintiff contends that the post-accident conduct
may not be considered for an award of punitive damages because of the lack of causation.  The
Court need not decide this issue to resolve this motion and resolves this pending motion without
consideration of the post-accident circumstances.

MEMORANDUM DECISION AND ORDER - 19

a careless manner without regard to the safety of others.  He was driving dangerously fast and without regard to the proper lane travel." *Id.*

Defendant does not dispute the evidence.  Defendant argues instead that it is insufficient to establish more than simple negligence.  Defendants argue the facts do not show the harmful state of mind and wantonness or recklessness required to prove a punitive damage claim.  The Court disagrees.  A reasonable jury could conclude that Nevarez was driving in extreme deviation from the standard of care.

**D.      Conclusion**

As set forth above, Plaintiff set forth sufficient evidence that supports a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages on the basis of  (1) Defendant Swift's hiring of and then failing to supervise Nevarez, and (2) Defendant Nevarez's driving conduct.  Plaintiff's Motion to Amend is granted as to both defendants.

///

///

///

///

///

///

///

///

///

///

MEMORANDUM DECISION AND ORDER - 20

**ORDER**

IT IS HEREBY ORDERED that Plaintiff's Motion to Amend Complaint to Add Claim and Prayer for Prayer for Punitive Damages (Docket No. 87) is GRANTED.  Provided, however, that Plaintiff submit to the Court and Defendants the proposed amended complaint prior to filing, no later than June 10, 2009.  Plaintiff may not file the amended complaint until so approved by the Court;

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (Docket No. 102) is DENIED.



DATED:  **May 29, 2009**.

Honorable Larry M. Boyle
United States Magistrate Judge

MEMORANDUM DECISION AND ORDER - 21